UNITED STATES EX REL. GREATHOUSE ET AL. *v.* DERN, SECRETARY OF WAR, ET AL.

No. 677. Argued April 11, 12, 1933.—Decided May 8, 1933

Mr. Spencer Gordon, with whom Messrs. J. Harry Covington and John Marshall were on the brief, for petitioners.

Mr. Seth W. Richardson, with whom Solicitor General Thacher and Messrs. G. A. Iverson and Erwin N. Griswold were on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

The relators, petitioners here, filed their petition in the Supreme Court of the District of Columbia for a writ of mandamus to compel the Secretary of War and the Chief of Engineers to authorize the construction of a wharf in the Potomac River within the District of Columbia adjacent to their land on the Virginia shore, the construction being forbidden by § 10 of the Act of March 3, 1899, c. 425, 30 Stat. 1121, 1151, 33 U.S.C., § 403, "except on plans recommended by the Chief of Engineers and authorized by the Secretary of War." The judgment of the Supreme Court denying the writ was affirmed by the District Court of Appeals. 61 App.D.C. 360; 63 F. (2d) 137. This Court granted certiorari. 288 U.S. 598.

Petitioners claim title through a grant to their predecessors in interest of a plot of upland lying in the

State of Virginia, which extended at the time of the grant to the Potomac River. The upland has been enlarged by the recession of the river toward the north and it is the contention of the petitioners that the enlargement is due to accretion, with the result that their ownership has been extended beyond the shore line of the river, as it existed at the time of the grant, to the present high water line, a claim which is put in issue by the answer. But it is conceded that the bed of the river below high water mark, where the proposed wharf is to be built, lies within the District of Columbia and that title to it and sovereignty over it were vested in the United States by cession from the State of Maryland of the area constituting the present District of Columbia. See Maryland Laws, 2 Kilty, Sess. of November 1791, c. 45; *Smoot Sand & Gravel Corp.* v. *Washington Airport,* 283 U.S. 348; *Maryland* v. *West Virginia,* 217 U.S. 577; *Marine Railway Co.* v. *United States,* 257 U.S. 47, 64; *Morris* v. *United States,* 174 U.S. 196, 225; Revised Statutes relating to the District of Columbia (1875), § 1. Within this area Congress has the plenary power to control navigation which was vested in the United States before the cession and which it exercises generally over navigable waters within the several states. It also acquired by the cession proprietary powers over the lands lying under water, and under Article 1, § 8 of the Constitution, granting exclusive legislative power over the District, the sovereign power to regulate and control their use for public purposes other than navigation.

Petitioners have entered into a contract for the sale of their lands, conditioned upon securing permission to build the wharf, which is to be built and used by the purchaser in connection with a plant to be established on the upland for the storage of gasoline. It is stipulated on the record that the proposed wharf, which is to be constructed in conformity to plans approved by the Chief of Engi-

neers, will not interfere with navigation. Petitioners assert a right as riparian owners to build and maintain it upon two grounds, first, that by the common law rule as developed in the United States, the ownership of land bordering on a navigable river carries with it the right to build and maintain below high water mark a wharf or other structure, not an obstruction to navigation (see *Shively* v. *Bowlby*, 152 U.S. 1; *United States* v. *River Rouge Co.*, 269 U.S. 411, 418; *Norfolk* v. *Cooke*, 27 Grat. 430; *Baltimore & Ohio R. Co.* v. *Chase*, 43 Md. 23) and, second, that by Paragraph "Seventh" of the Compact of 1785 between Maryland and Virginia, ratified by Virginia March 28, 1785, 12 Hening, Virginia Stat. 50, and by Maryland, March 12, 1786, Maryland Laws, 2 Kilty, Session of November 1785, c. 1, it was provided:

"The citizens of each state respectively shall have full property in the shores of Patowmack River adjoining their lands, with all emoluments and advantages thereunto belonging, and the privilege of making and carrying out wharfs and other improvements, so as not to obstruct or injure the navigation of the river; . . ."

They insist that as the proposed wharf will not interfere with navigation and as plans for its construction have been approved by the Chief of Engineers, it is the legal duty of the Secretary of War, under § 10 of the Rivers and Harbors Appropriation Act of March 3, 1899, to grant the desired permit. It is conceded by the government that the only basis for the Secretary's refusal to authorize the construction of the wharf is that it would be inimical to the establishment of the proposed George Washington Memorial Parkway authorized by Act of Congress of May 29, 1930, c. 354, 46 Stat. 482.

By this legislation Congress appropriated $7,500,000 for the construction of a parkway a part of which is to extend along the Virginia shore of the Potomac River from Mount Vernon to a point above the Great Falls.

It authorized the National Capital Park and Planning Commission " to occupy such land belonging to the United States as may be necessary for the development and protection " of the Parkway. Construction of the Parkway was authorized as a part of the federal-aid highway program and was made conditional upon the contribution by Maryland or Virginia or others of one-half the cost of the required lands, other than those of the United States. But the Commission was empowered, in its discretion, to advance the full cost of the Parkway upon securing undertakings from these states, upon terms prescribed by the statute, to repay one-half of the cost to the federal government. A part of the Parkway, the Mount Vernon Memorial Highway, extending along the Virginia shore of the river from Mount Vernon to a point within the District of Columbia, a short distance below the land of the petitioners, has been completed.

Pending this suit, but before its trial, the Park and Planning Commission, by resolutions of September 24–26, 1931, declared that certain lands of the United States, described by metes and bounds, running along the high water line of 1863 on the Virginia side of the river, as established by United States Coast Survey, and extending to the center line of the channel of the river, are necessary for the development and protection of the Parkway. By further resolution, the Commission declared that it took complete and exclusive possession of these lands, which include the river bed where it is proposed to build the wharf and the upland claimed by petitioners by accretion. It directed that copies of the resolutions be posted on each parcel, which was done before the hearing in this suit. A description of each was also sent to the Attorney General for the purpose of having suits filed under the Act of April 27, 1912, c. 96, 37 Stat. 93, which authorizes suits by the Attorney General to quiet title to lands adversely held or claimed lying under and adjacent to the Potomac

River within the District of Columbia. The plans of the Commission also contemplate the construction of a highway across petitioners' upland as a means of access to the Parkway.

It is apparent that petitioners are entitled to the relief prayed only if several doubtful questions are resolved in their favor. They are (1) whether a mandatory duty is imposed upon the Secretary of War by § 10 of the Rivers and Harbors Appropriation Act to authorize the construction of the proposed wharf if he is satisfied that it will not interfere with navigation; (2) whether in fact petitioners have title, by accretion, to the upland adjacent to the river at the point where it is proposed to build the wharf, and thus have the status of riparian owners; (3) whether even as riparian owners of land lying within Virginia, petitioners, in the absence of a legislative grant either by Maryland before the cession or by the United States after it, have a common law right to build a wharf on the adjacent lands of the United States lying in the bed of the river, see *Casey's Lessee* v. *Inloes*, 1 Gill 430; *Browne* v. *Kennedy*, 5 Harris & J. 195; *Giraud's Lessee* v. *Hughes*, 1 Gill & Johns. 249, 265; *Wilson's Lessee* v. *Inloes*, 11 Gill & Johns. 351; *Hammond's Lessee* v. *Inloes*, 4 Md. 138; *Horner* v. *Pleasants*, 66 Md. 475; 7 Atl. 691; *Attorney General* v. *Hudson County Water Co.*, 76 N.J.Eq. 543; 76 Atl. 560, or if not (4) whether their predecessors in title acquired such a right under Paragraph Seventh of the Maryland-Virginia Compact, *Georgetown* v. *Alexandria Canal Co.*, 12 Pet. 91; *Potomac Steamboat Co.* v. *Upper Potomac Steamboat Co.*, 109 U.S. 672, 675; (5) whether, if such a right were derived from the Compact, it was not lost before its exercise by the union in the single ownership of the United States of the land under the river, and on both sides of it, which resulted from the cession by Maryland and Virginia of the area originally embraced in the District of Columbia and continued until the retro-

cession in 1846 of the lands on the Virginia side, see *Georgetown* v. *Alexandria Canal Co., supra;. Evans* v. *United States,* 31 App.D.C. 544, 550; *Herald* v. *United States,* 284 Fed. 927; and (6) whether the right claimed is not in any case subordinate to the power of the United States, in its capacity as proprietor and sovereign, to devote the river bed to a public purpose, as has been done by the action of the Commission, taken under authority of Act of Congress authorizing the George Washington Memorial Parkway. See *Fox River Paper Co.* v. *Railroad Commission of Wisconsin,* 274 U.S. 651; *United States* v. *Chandler-Dunbar Co.,* 229 U.S. 53; *Barney* v. *Keokuk,* 94 U.S. 324; *Giraud's Lessee* v. *Hughes, supra; Casey's Lessee* v. *Inloes, supra; Linthicum* v. *Coan,* 64 Md. 439, 453; 2 Atl. 826; *Classen* v. *Chesapeake Guano Co.,* 81 Md. 258, 267; 31 Atl. 808.

The Government contends that in view of the nature of these questions the case is not an appropriate one for mandamus, since ordinarily mandamus against a public officer will not lie unless the right of the petitioner and the duty of the officer, performance of which is to be commanded, are both clear. See *McLennan* v. *Wilbur,* 283 U.S. 414, 419, 420; *Interstate Commerce Commission* v. *New York, New Haven & Hartford R. Co.,* 287 U.S. 178; *Redfield* v. *Windom,* 137 U.S. 636; *Bayard* v. *White,* 127 U.S. 246. It is insisted that both the petitioners' riparian ownership and the right to build the wharf which they claim to have derived from it, are doubtful; and in any event that the duty of the Secretary under the statute [1] is not plain and certain, since

---

[1] " Sec. 10. That the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is hereby prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water

the words forbidding all structures in any navigable river, "except on plans recommended by the Chief of Engineers and authorized by the Secretary of War," are only permissive, not mandatory, and there is no plain implication of a duty on the part of the Secretary to authorize a structure in the Potomac River within the District of Columbia to which there is substantial objection that it infringes the rights or obstructs the public policy of the United States as owner and sovereign of the river bed.

But we find it unnecessary, in the circumstances of this case, to say what effect should be given to these objections alone, whether considered each separately or together. Although the remedy by mandamus is at law, its allowance is controlled by equitable principles, see *Duncan Townsite Co.* v. *Lane*, 245 U.S. 308, 311; *Arant* v. *Lane*, 249 U.S. 367, 371; *Redfield* v. *Windom, supra,* 644; cf. *Turner* v. *Fisher*, 222 U.S. 204; *Ex parte Skinner & Eddy Corp.*, 265 U.S. 86, 95; *People ex rel. Wood* v. *Assessors*, 137 N.Y. 201; 33 N.E. 145; *Matter of Lindgren*, 232 N.Y. 59; 133 N.E. 353; *McCarthy* v. *Street Comm'rs*, 188 Mass. 338; 74 N.E. 659; *People ex rel. Stettauer* v. *Olsen*, 215 Ill. 620; 74 N.E. 785, and it may be refused for reasons comparable to those which would lead a court of equity, in the exercise of a sound discretion, to withhold its protection of an undoubted legal right. For such reasons we think the relief sought by

of the United States outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of War; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of War prior to beginning the same."

mandamus should be denied here, even if petitioners' title to the upland adjacent to the river and their right to build the wharf were less doubtful than they are. The government, through its duly authorized agency, the Park Commission, has declared that both the bed of the river and the upland adjacent to it shall be devoted to a public purpose for the construction of the Parkway, and the plans of the Commission contemplate the taking, by purchase or condemnation, of a part of petitioners' property as a means of access to it. The apparent consequence of authorizing the construction of the wharf would be only to increase the expense to the government of constructing the Parkway, by the cost of destroying the wharf, and by so much of the cost of the wharf and of the other proposed improvements as may be included in the just compensation to be awarded for their taking. Thus the extraordinary remedy by mandamus, invoked to protect rights to which petitioners are not shown to be clearly entitled, would be burdensome to the government without any substantially equivalent benefit or advantage to the petitioners or their vendee, apart from the incidental and irrelevant consequence that petitioners might secure the performance of their conditional contract.

The court, in its discretion, may refuse mandamus to compel the doing of an idle act, *Turner* v. *Fisher, supra,* 209; *Wilson* v. *Blake,* 169 Cal. 449; 147 Pac. 129; or to give a remedy which would work a public injury or embarrassment, (see *Duncan Townsite Co.* v. *Lane, supra; Arant* v. *Lane, supra; Effingham, Maynard & Co.* v. *Hamilton,* 68 Miss. 523; 10 So. 39; cf. *Matter of Lindgren, supra,* 66; *McCarthy* v. *Street Comm'rs, supra*) just as in its sound discretion a court of equity may refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest. See *Seaboard Air Line Ry. Co.* v. *Atlanta B. & C. R. Co.,* 35 F. (2d) 609;

*Conger* v. *New York, W. S. & B. R. Co.*, 120 N.Y. 29; 23 N.E. 983; *Clarke* v. *Rochester, L. & N. F. R. Co.*, 18 Barb. 350; *Whalen* v. *Baltimore & Ohio R. Co.*, 108 Md. 11; 69 Atl. 390; *Curran* v. *Holyoke Water Power Co.*, 116 Mass. 90; *Southern Ry. Co.* v. *Franklin & P. R. Co.*, 96 Va. 693; 32 S.E. 485; cf. *Willard* v. *Tayloe*, 8 Wall. 557.

*Affirmed.*