METROPOLITAN BRIDGE CO. et al. v. FEDERAL EMERGENCY ADMINISTRATION OF PUBLIC WORKS et al.

No. 6946.

United States Court of Appeals for the District of Columbia.

Argued June 7, 1937.

Decided June 28, 1937.

Frederick Olds, of San Francisco, Cal., and Harrison Brand, Jr., of Washington, D. C., for appellants.

John W. Scott, Enoch E. Ellison, and Carl F. Farbach, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is a mandamus proceeding. Appellant Tomasini, claiming to be the owner and holder of a franchise granted to him by the board of supervisors of the county of Alameda, Cal., to construct, maintain, and operate a toll bridge and tube across San Francisco Bay from Point Fleming, county of Alameda, to Bluff Point in the county of Marin, filed a petition in the court below in which he prayed that a writ of mandamus issue against Secretary Ickes and two others commanding them to consider upon its merits his application for a loan and grant filed with them as Administrator and Assistant Administrators of the Federal Emergency Administration of Public Works (PWA). His petition sets out that he obtained the franchise on the 26th of March, 1928, and that on July 15, 1932, the permit and authority to construct the bridge and tube was granted by the War Department and is now in full force and effect. He says in his petition that the actual construction and operation of the project will be carried on by a corporation and that he has caused such a corporation, known as the Metropolitan Bridge Company, to be organized and has agreed to assign the franchise and authority from the War Department "upon the completion of a financing program, and said corporation will then carry on the construction and operation of said project." The petition is entitled in the name of Tomasini and the bridge company, but is signed only by Tomasini, and so far as appears the franchise and all rights under it continue in the name of Tomasini. The petition, however, states that the application for a loan and grant made to PWA was filed on behalf of both the bridge company and Tomasini. The application was filed under the provisions of the Emergency Relief Appropriation Act of 1935 (49 Stat. 115, 15 U.S.C.A. § 728 note), and particularly under the paragraph marked (g) which provides for loans or grants, or both, for projects of states and agencies thereof, etc.

Petitioner states .that the application was filed the 29th of May, 1935, and came into the hands of respondents, "and was acted upon by respondents to the extent that they definitely refused to consider said application for the wholly erroneous, illegal, capricious and unlawful reason," viz.: "that said applicant, Metropolitan Bridge Company * * * is a private corporation, and as such is not entitled to make such application for a loan and grant."

Secretary Ickes and his corespondents filed defenses in point of law and in answer to the petition. They denied that Tomasini and the bridge company or either of them had ever filed an application for a loan and grant under the 1935 act and averred that the only application which had come into their hands was an application filed by petitioners with the Reconstruction Finance Corporation in the year 1933 which was in that year transferred to PWA for consideration and action under the terms of title 2 of the National Industrial Recovery Act of 1933, 48 Stat. 200; that the application under the provisions of the 1933 act was considered and the loan denied because not properly secured.

To this answer appellant Tomasini filed a reply in which he admitted the application was not filed directly with appellees but was filed with the National Emergency Council and that this was done pursuant to Executive Orders directing the manner of making application, and he insists that the application did come into appellees' hands and that they refused to consider it for the reasons alleged.

Respondents thereupon made a motion for judgment dismissing the petition, and the court below in a short memorandum opinion refused the mandamus and dismissed the petition for the reason that it was not clear that the application was eligible for consideration.

The facts which we shall take to be admitted are that Tomasini holds a franchise permitting him to build and operate a bridge and tube and that he has organized a corporation to which he proposes to assign the franchise if financial backing can be obtained; that in 1933 he and the bridge company made application to RFC for a loan and grant with which to finance the enterprise; that this application after due consideration was denied;

that in May, 1935, a similar application was filed which duly came to PWA for examination and that respondents sufficiently considered it to determine that the applicant was not (within the intent of the act) an agency of the state granting the franchise and was, therefore, under the act not entitled to make the application.

Mr. Ickes and his assistants urge several separate grounds of defense to the granting of the petition, but in our view these may be laid to one side and the case decided on the single ground set out in petitioners' brief, viz.: that "the Court below erred in deciding that upon the facts stated it was not clear that appellants' application for a loan was eligible for consideration," i. e., on the merits.

The act which petitioners rely upon here is the Emergency Relief Appropriation Act of April 8, 1935, making appropriations for relief purposes. That act appropriates four billions of dollars to be used in the discretion and under the direction of the President to "provide relief, work relief and to increase employment by providing for useful projects," etc. It further provides for use by the President of various large sums of money remaining unexpended out of the appropriation made in 1932 to the Reconstruction Finance Corporation (47 Stat. 709) and out of the appropriation for national industrial recovery made in 1933 (48 Stat. 195, 275), and then specifies the classes of projects for which the money shall be available. These include (a) highways, roads, streets, and grade crossing elimination; (b) rural rehabilitation and relief in stricken agricultural areas, water conservation, trans-mountain water diversions, and irrigation and reclamation; (c) rural electrification; (d) housing; (e) assistance for educational, professional, and clerical persons; (f) Civilian Conservation Corps; and (g) (the section to which petitioners point) "loans or grants, or both, for projects of States, Territories, Possessions, including subdivisions and agencies thereof, municipalities, and the District of Columbia, and self-liquidating projects of public bodies thereof."

It is insisted by petitioners that the bridge company or Tomasini (dependent upon which for the time being is holder of the franchise) is a public corporation or a "public individual" and either is an agency of the sovereign power granting the franchise. They cite in support of this proposition a number of cases holding that the operation of bridges by private corporations under a valid franchise constitutes such corporations agencies of the government in the performance of a governmental function—or, in other words, makes such a corporation or person a governmental agent. Generally speaking, this is a correct statement for, as the Supreme Court said in Commissioners of Dodge County v. Chandler, 96 U.S. 205, 24 L.Ed. 625, a public bridge is a work of internal improvement and if a franchise for such a work is granted to an individual or corporation it is a public franchise and the right to take tolls is granted as compensation for erecting the work and relieving the public treasury of the burden—so that those who have such franchises are agents of the public. But it does not necessarily follow from this that Congress in using the words—projects of states, including subdivisions and agencies thereof—intended such projects to include a private individual or profit-making corporation holding a franchise issued by a county for the construction of a bridge. To the contrary, we think an inspection of the three relief acts to which we have referred, which may be and should be considered together since they had a common purpose, tends strongly to show an intention on the part of Congress to treat the two classes of projects as separate and distinct. This intention is revealed by tracing the 1935 act back to its predecessor, the 1933 act, and the 1933 act back to the 1932 act, of which it was clearly a supplement.

With this thought in mind, we look first to the provisions of the 1932 act. It was an act to broaden the powers of the Reconstruction Finance Corporation (47 Stat. 709, 711), and by section 201(a), 15 U.S.C.A. § 605b(a), authorized the RFC (1) to make loans to states and political subdivisions of states, and to public agencies of states and political subdivisions of states; (2) to make loans to corporations formed wholly for the purpose of providing housing for families of low income and for slum clearance; (3) to make loans to private corporations to aid in the construction of bridges, tunnels, docks, viaducts, water works, canals, and markets devoted to public use and which are self-liquidating in character; (4) to make loans to private corporations to aid in the protection and development of forests and other natural resources regulated by a state or political subdivision of a state

and self-liquidating; (5) to make loans for construction of any publicly-owned bridge to be used for a railroad or highway, the construction cost of which might be expected to be returned by means of tolls, etc.

The 1933 act (48 Stat. 195, 200, § 202, 40 U.S.C.A. § 402) authorized a program of public works to be prepared and designated projects to be included thereunder and incorporated by reference any project of a character theretofore eligible for loans under subsection (a) of section 201 of the 1932 act, and specifically provided that paragraph 3 of section 201 (the private-owned toll bridge section) should be held to include—in addition to private corporations for the construction of bridges, tunnels, etc.—hospitals in part financed by public funds, reservoirs, pumping plants, and drydocks. It will thus be seen that in the 1932 act Congress in designating the various projects to be supported by loans distinctly placed in one class states, political subdivisions of states, and public agencies of states and political subdivisions of states, and in another and entirely separate class private corporations for the construction, replacement, or improvement of bridges, tunnels, docks, etc. This distinction between the two classes of projects was carried forward in the 1933 act, where we find Congress extending the latter to include hospitals, pumping plants, etc.

But in the appropriation in 1935 Congress, after providing for the disposition and use of the funds previously appropriated but unallotted under the 1932 and 1933 acts, specially designated the classes of projects eligible under its terms for loans and grants to include only highways, streets, grade crossings, rural rehabilitation, stricken agricultural areas, water conservation, irrigation, reclamation, electrification, housing, and assistance for educational and professional persons, and the CCC—and then provided as in the previous acts for loans or grants to states and subdivisions and agencies thereof, but omitted all reference to projects included specifically under the previous acts in a separate and distinct clause as a separate and distinct class. We think this omission in the circumstances we have named evidences the purpose of Congress to confine the grant or loan authorized under the 1935 act to instrumentalities of a public nature created by a state to carry through a program of public works of the general type of Port of New York Authority and other like public agencies; and this view is strengthened—at least so far as administrative practice gives it force—by looking at the thousands of projects for which grants and loans have been made under the act, none of which so far as we can discover is of the class here involved.[1] Considered in the aspect we have discussed, we are of opinion that respondents and the various boards whose actions are under attack did not err in determining that petitioners were not within the class of persons eligible for a loan or grant under the act. But even if we are mistaken in thinking that this proposition is manifest from the language of the act and its history, at the very least it is far from clear that the contrary contention of petitioners is correct; for, as was said by Justice Cardozo in Interstate Commerce Comm. v. New York, N. H. & H. R. Co., 287 U.S. 178, 203, 53 S.Ct. 106, 113, 77 L.Ed. 248, here as there, "One cannot rise from a study of the statute in the setting of its history and of the administrative practice under it and hold at the end an assured belief that the. Commission has been commanded by the Congress to do the act omitted." And so in either case mandamus ought not to issue. United States v. Dern, 289 U.S. 352, 358, 53 S.Ct. 614, 616, 77. L.Ed. 1250; United States v. Wilbur, 283 U.S. 414, 420, 51 S.Ct. 502, 504, 75 L.Ed. 1148.

Affirmed.