Harold C. ACKERT, as Trustee for the benefit of Laura B. Smith, Petitioner,

v.

Honorable Frederick van Pelt BRYAN, District Judge, United States District Court for the Southern District of New York, Respondent.

Docket 27240.

United States Court of Appeals Second Circuit.

Motion Argued Nov. 27, 1961.

Decided Jan. 3, 1962.

Rehearing Denied Feb. 8, 1962.

**66**

Abraham L. Pomerantz, New York City (Pomerantz, Levy & Haudek, and William E. Haudek, Rosenfeld & Silverman, New York City, on the brief), for petitioner.

Samuel E. Gates, New York City (Debevoise, Plimpton & McLean, and Robert J. Geniesse, Robert L. King, New York City, Davis, Polk, Wardwell, Sunderland & Kiendl, and Taggart Whipple, Philip C. Potter, Jr., Roland W. Donnem, New York City, on the brief), for respondent.

Before CLARK, FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

Plaintiff in Ackert v. Ausman[1] petitions this Court for a writ of mandamus

directing Judge Frederick van Pelt Bryan to retain jurisdiction over that action. On October 17, 1961 Judge Bryan filed an opinion granting a motion made by two of the defendants in that case for its transfer pursuant to 28 U.S.C. § 1404 (a) from the Southern District of New York to the District of Minnesota, Fourth Division (at Minneapolis). Pending argument and disposition of this application the proceedings in the District Court were stayed.[2]

Petitioner urges this Court to issue the writ, claiming: (1) that Judge Bryan abused his discretion in directing a transfer of the action to Minnesota, and (2) that the action could not have been "brought" in the transferee court within the meaning of Section 1404(a)[3] and therefore the transfer could not, as a matter of law, be made.

The action giving rise to this motion was begun by a trustee of a trust which was alleged to be a stockholder of defendant Investors Mutual, Inc. (Mutual), a diversified open-end management investment company. The trustee's amended complaint states that the action is brought "derivatively on behalf of Investors Mutual and representatively on behalf of himself and other stockholders of Investors Mutual" against Investors Diversified Services, Inc. (Diversified), an investment advisor to Mutual, and thirteen individual defendants who are or have been directors of Mutual and Diversified or both.[4] Jurisdiction was alleged to exist under the Investment Company Act of 1940[5] and also because of diversity of citizenship.[6] The amended complaint charges, as summarized by

---

1. 198 F.Supp. 538 (S.D.N.Y.).

2. October 26, 1961.

3. 28 U.S.C. § 1404(a) reads,
"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

4. Only four of the individual defendants named in the complaint were served with process, and the action was dismissed by consent as to two of them. The remaining individual defendants are alleged to be directors of both Mutual and Diversified.

5. 15 U.S.C.A. § 80a–1, et seq.

6. 28 U.S.C. § 1332.
Plaintiff is a citizen of Missouri; Mutual a Nevada corporation with its principal place of business in Minnesota; Diversified a Minnesota corporation with its principal place of business in the same state; and the two individual defendants served with process and remaining in the case citizens of New Jersey and New York respectively. But one of these in-

the District Court, at page 540 of its opinion,

"that the individual defendants and Diversified dominate and control Mutual, and the individual defendants as directors of Mutual are subservient to the wishes of Diversified without regard to Mutual's best interests; that the fees payable to Diversified were established arbitrarily and collusively to benefit the defendants and not Mutual; that the fees are grossly excessive and unfair and will become increasingly so under the same fixed percentage arrangement as Mutual's assets increase; that Diversified gives the same advice to Mutual which it gives to all five mutual funds it services and thereby multiplies its fees; and that Diversified and the individual defendants used the advice paid for by Mutual and obtained by them for nothing to build their own portfolios of securities and thus appropriated a valuable asset of Mutual for their own use and benefit."

These acts were alleged to constitute a waste of Mutual's assets for the benefit of defendants, and a violation of the individual defendants' fiduciary duties under the Investment Company Act of 1940. The plaintiff sought a declaration of the rights of the parties, an accounting by the defendants of their profits, damages, and the costs and expenses of the action including counsel and accountant's fees. None of the defendants has answered as yet. Instead, the corporate defendants, Mutual and Diversified moved for transfer pursuant to Sec. 1404(a); and Mutual made a second motion under 28 U.S.C. § 1406 for dismissal or alternatively for transfer because of improper venue. The two individual defendants did not join in these motions, but neither did they oppose them. Having granted transfer under Section 1404(a), Judge Bryan quite properly denied as moot the motion for transfer pursuant to Section 1406.

It has long been settled in this Circuit that an order granting or denying a motion for transfer of an action under Section 1404(a) to a District Court in another Circuit is not final, and is therefore not appealable. 28 U.S.C. § 1291; Henvey v. Briscoe, 253 F.2d 484 (2d Cir. 1958); Littman v. Bache & Co., 246 F.2d 490 (2d Cir. 1957); Arrowhead Co. v. The Aimee Lykes, 193 F.2d 83 (2d Cir. 1951); Ford Motor Co. v. Ryan, 182 F.2d 329 (2nd Cir.), cert. denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); Koons v. Kaufman, 187 F.2d 1023 (2nd Cir. 1950), cert. denied 340 U.S. 942, 71 S.Ct. 505, 95 L.Ed. 679 (1951); Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866 (2nd Cir. 1950).

This does not mean that Section 1404(a) orders entered in the trial courts of this circuit are immune from review by this Court. On petitions for mandamus, invoking our auxiliary appellate power under the All Writs section of the Judicial Code, 28 U.S.C. § 1651, we have undertaken a closely circumscribed review of such orders. Nevertheless, mandamus is not a substitute for appeal, Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953); Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); Alcoa S. S. Co. v. Ryan, 211 F.2d 576, 577 (2nd Cir. 1954), and it is not to be used as a method of appealing from an interlocutory order not made appealable by statute, Abrams v. McGohey, 260 F.2d 892 (2nd Cir. 1958). See generally, Note, Appealability of 1404(a) Orders: Mandamus Misapplied, 67 Yale L.J. 122 (1957).

When appeal in due course is a clearly inadequate remedy, the extraordinary writ may be appropriate. Ex parte Fahey, supra. Thus, when a trial court has refused to grant a transfer, its action has been reviewed to determine whether

dividuals, Kirby, was not served within the territorial jurisdiction of the Southern District of New York; he was served

under the extraterritorial provisions of Section 44 of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–43.

the refusal involved an abuse of discretion. Lykes Bros. S. S. Co. v. Sugarman, 272 F.2d 679 (2nd Cir. 1959); Ford Motor Co. v. Ryan, supra. This is because any error in the interlocutory order "would probably be incorrectible on appeal" since the party which sought the transfer, and then lost the action on its merits, "could hardly show that a different result would have been reached had the suit been transferred." Id., 182 F.2d, at p. 330.

■ However, when a trial court has granted a motion for transfer, review of its action on a petition for mandamus is more restricted. This is because the appellate court must consider the interference which review itself will work on the transfer procedure contemplated by the statute. Judge Magruder, in a brilliant opinion, gave particular attention to this problem. By enacting Section 1404(a), he noted, Congress

> "provided an administrative facility that was supposed to contribute to the convenience and expedition in the disposition of cases. This policy" he warned, "would certainly be defeated if the courts of appeals in the transferor districts should make it a routine practice to hold up the trial of a case pending review on mandamus of the question where the case ought to be tried." In re Josephson, 218 F.2d 174, 182 (1st Cir. 1954).

See also the opinion by Judge Goodrich in the earlier case of All States Freight v. Modarelli, 196 F.2d 1010, 1012 (3rd Cir. 1952) wherein he concludes,

> "it will be highly unfortunate if the result of an attempted procedural improvement is to subject parties to two lawsuits: first, prolonged litiga-

tion to determine the place where a case is to be tried; and, second, the merits of the alleged cause of action itself."

Therefore, when a motion for transfer has been granted, review of the lower court's order on a petition for mandamus has been limited to consideration of whether the trial court had power to make that transfer, Anthony v. Kaufman, 193 F.2d 85 (2nd Cir. 1951), cert. denied 342 U.S. 955, 72 S.Ct. 629, 96 L. Ed. 710 (1952); Arrowhead Co. v. The Aimee Lykes, supra; Foster-Milburn Co. v. Knight, 181 F.2d 949 (2nd Cir. 1950), or whether it committed a gross abuse of discretion by causing extreme hardship on the party who opposed it, Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., supra, 178 F.2d, at p. 869. See generally, Kaufman, Observations on Transfers Under Section 1404(a) of the New Judicial Code, 10 F.R.D. 595 (1951); Kaufman, Further Observations on Transfers Under Section 1404(a), 56 Colum.L.Rev. 1 (1956).

In the instant case petitioner does not seriously press any claim that the transfer to be ordered by Judge Bryan would "handicap his presentation of the case," or that it would so unreasonably "add to the costs of trial" as to cause him to be prejudiced within the meaning of Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., supra, 178 F.2d, at p. 869. The finding by the trial court, with which we agree, that "the balance of convenience of parties and witnesses is overwhelmingly in favor of transfer," and that the Southern District of New York was not in fact "a convenient or appropriate forum," a finding which is supported by very substantial evidence, negates this possibility of prejudice.[7]

7. Mutual's principal place of business and only office (in which it keeps practically all of its records) is in Minneapolis. Diversified also has its main office and principal place of business there. Most of the present and past employees of both concerns likely to become involved in the litigation are located in Minneapolis. The contracts between the two corpora-

tions which are challenged were made in Minnesota, and most of the other events involved in the litigation took place there. There appears to be no connection between the case and the Southern District of New York except that plaintiff, a non-resident, brought the action there, and one of the individual defendants resides within that jurisdiction.

Instead, the petitioner in the main directs our attention to the question of the District Court's power to make the transfer, regardless of the balance of convenience. Foster-Milburn Co. v. Knight, supra. He states quite properly that a necessary condition of any such order is that the action "might have been brought" in the suggested transferee court. 28 U.S.C. § 1404(a). It is his claim that the present action could not have been "brought" in the District Court for the District of Minnesota, because the individual defendants do not reside in Minnesota, and the District Court there could not gain personal jurisdiction over them. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Petitioner admits that his amended complaint alleges a claim under the Investment Company Act of 1940, 15 U.S.C.A. § 80a–1 et seq., and that under Section 44 of that Act, 15 U.S.C. 80a–43, the individual defendants would be subject to extraterritorial service of process. But he asserts that Section 44 permits this only for "actions at law brought to enforce any liability or duty created by" the Act, and in Brouk v. Managed Funds, Inc., 286 F.2d 901 (8th Cir.), cert. granted 366 U.S. 958, 81 S.Ct. 1921, 6 L.Ed.2d 1252 (1961), the Eighth Circuit, which encompasses the District of Minnesota, has held that the Act does not impose a duty or liability on directors for violation of its provisions enforceable by private actions. In short, petitioner urges that in light of the Brouk decision, it would seem that the District Court in Minnesota has been deprived of subject matter jurisdiction over the Investment Company Act claim, and, as a result, could not gain personal jurisdiction over the two individual defendants by use of the extraterritorial service provisions of Section 44.

It is not clear, however, that the lengthy Brouk opinion does stand for the proposition attributed to it by the petitioner. It is quite likely that the Eighth Circuit has only held that the complaint in the Brouk action did not state facts sufficient to raise a claim under the In-vestment Company Act. Cf. Brown v. Bullock, 294 F.2d 415, 421–422 (2nd Cir. 1961). In any event, even if we were to conclude that the Brouk decision stood for the general proposition that Congress intended "to refrain from entering the field of director responsibility," Brouk v. Managed Funds, Inc., supra, 286 F.2d at p. 916, and that jurisdiction in a stockholder action such as this could never be predicated on the extraterritorial provisions of Section 44, because of the unique facts present here it would not necessarily follow that this conclusion would prevent a transfer of the present action under 28 U.S.C. § 1404(a).

It is noted that this Circuit has already held quite explicitly that the Investment Company Act can be the basis for a stockholder action similar to the present one, and, as a result, that Section 44 is available for jurisdictional purposes. Brown v. Bullock, supra. Since it is federal law which is being construed, a reasonable argument might be made that in deciding whether the transferee court will have jurisdiction under Section 44, and therefore whether the action "might have been brought" there, we should look to our decision in Brown v. Bullock, supra, rather than to the Eighth Circuit decision which holds to the contrary. We are not dealing with a true conflict of laws problem. See Cheatham, Goodrich, Griswold, Reese, Cases on Conflict of Laws, 585–86 (4 ed. 1957). On the other hand, considering that it is the purpose of the transfer statute "to make the inevitably uncomfortable (for the litigant) judicial process cheaper and more convenient and, if possible, more prompt," All States Freight v. Modarelli, supra, 196 F.2d, at p. 1011, and that the statute itself instructs that transfers are to be made "in the interest of justice," 28 U.S.C. § 1404(a), perhaps conflict of law principles ought to be applied in a unique situation such as this. This question has never been decided and we are not called upon to do so, for the reasons stated.

Moreover, it is not altogether clear that in deciding whether an action is transferable under Section 1404(a), a

transferor court, in the absence of facts requiring application of the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), must consider whether this type of subject matter jurisdiction exists in the transferee court. Although there is indication in the cases that an action cannot be "brought" in a district lacking subject matter jurisdiction, e. g., In re Josephson, supra (diversity); Arvidson v. Reynolds Metals Co., 107 F.Supp. 51 (W.D.Wash.1952) (local claim), it is clear that there is a controlling difference between requiring the transferor court to determine in the first instance whether there will be, for example, diversity jurisdiction in the transferee court, and requiring it to go into the complexities of whether that court will have "federal question" [8] jurisdiction. Judge Parker in Clayton v. Warlick, 232 F.2d 699, 706 (4th Cir. 1956) stated the proposition succinctly:

> "We are not impressed by the argument that such transfer should be denied because of an alleged conflict of decision between this Circuit and the Seventh on an important question of law involved in the case. If there be such conflict, this presents a matter for consideration by the Supreme Court on application for certiorari, not for consideration by a district judge on application for transfer under 28 U.S.C. § 1404(a). We have no sympathy with shopping around for forums."

In any event, it is clear that in order to pass upon the merits of petitioner's claim this Court would have to resolve a number of complex issues of considerable significance. In addition we would be anticipating actions by counsel and the court which, at the very least, would be uncertain. Before attempting that, there should be a showing that unless such a decision is rendered the petitioner will suffer undue prejudice. In the present case we do not think such a demonstration can be made. At the heart of all these issues is the apparent conflict between decisions of the Eighth and this Circuit over the proper construction of the Investment Company Act of 1940. This is not a conflict which can be resolved effectively without the intervention of the Supreme Court. Evidently recognizing this fact, that court has seen fit to grant certiorari in the Brouk case. We may expect, consequently, that the conflict will soon be resolved.

Thus we are left with a situation in which petitioner urges this Court to decide issues intricately interwoven with a conflict which will shortly disappear. When that occurs, disposition of these issues will become unnecessary to the determination of the merits of this particular controversy. If we do not decide those issues, and deny the petition for mandamus, the action will be transferred as directed by Judge Bryan in the exercise of his discretion, a discretion which we would in the instant case refuse to review. If the Supreme Court reverses the Brouk decision, any interference with the transfer which this Court might order as a result of the present petition would be plainly improper.

■■ Mandamus, prohibition or injunctions against judges "are drastic and extraordinary remedies * * * they have the unfortunate consequence of making the judge a litigant * * *." Ex parte Fahey, supra, 332 U.S., at p. 260, 67 S.Ct., at p. 1559. Warnings against this type of review have been sounded repeatedly. In re Josephson, supra; Clayton v. Warlick, supra; Lykes Bros. S. S. Co. v. Sugarman, supra. And the writ of mandamus may be granted or withheld in the sound discretion of this Court. LaBuy v. Howes Leather Co., 352 U.S. 249, 255, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). It may be refused for reasons comparable to those which would lead a court of equity, in the exercise of its discretion, to withhold its protection of an undoubted legal right. United States ex rel. Greathouse v. Dern, 289

8. 28 U.S.C. § 1331.

U.S. 352, 359, 53 S.Ct. 614, 77 L.Ed. 1250 (1933). As stated in the Roche case, supra, 319 U.S., at p. 26, 63 S.Ct., at p. 941, the question is whether "in the light of all the circumstances" of the case the situation is appropriate for the exercise of the mandamus power. "In determining what is appropriate we look to those principles which should guide judicial discretion in the use of an extraordinary remedy rather than to formal rules rigorously controlling judicial action." We believe that in view of the grant of certiorari by the Supreme Court in the Brouk case, a decision by this Court on the merits of the questions raised by this petition for mandamus would be inappropriate and that in light of all the circumstances of this case the writ should not issue.

Although the result of this decision will be to permit an immediate transfer of the action in accordance with the trial court's opinion and order, we are confident that the transferee court will not permit any proceedings in the case which would prejudice petitioner before determination of the Brouk case by the Supreme Court.[9]

Petition denied.

FRIENDLY, Circuit Judge (dissenting).

At the argument on this petition I advanced what seemed a practical suggestion that would have eliminated the need for either of the opinions here written. This was to defer ruling on the petition and leave the stay of the transfer in effect until the Supreme Court had decided the Brouk case, at which time action appropriate under the circumstances could be taken. Counsel for petitioner regarded the suggestion as a second best —perhaps the very best obtainable if we were to reject his contentions with respect to convenience in the usual sense, as we all agree in doing. Although defendants' counsel did not express themselves, they could have had no proper ground to oppose, assuming that we would have conditioned continuation of the stay on petitioner's not engaging in discovery or similar proceedings in the Southern District in the interim. For reasons I do not understand, my brothers decline to follow this simple and to me attractive course; instead they allow the transfer to the District of Minnesota, accompanying this with some unsolicited advice to that court as to its future conduct, which, however sensible, appears to be unseemly and to constitute the clearest evidence that transfer at the present juncture is not "in the interest of justice," 28 U.S.C. § 1404(a), even if it is within the power of the District Court, which I question.

I perceive no basis for doubting that the provision in 28 U.S.C. § 1404(a) that a district court may transfer a civil action only to another district "where it might have been brought" requires not only jurisdiction over the defendants and proper venue, as decided in Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), but jurisdiction of the court to entertain the claim, as Judge Fee held in Arvidson v. Reynolds Metals Co., 107 F.Supp. 51 (W.D.Wash.1952). If the complaint here did not set forth a claim cognizable under the Investment Company Act and Federal jurisdiction was grounded only on diversity of citizenship, jurisdiction over the individual defendants could not have been obtained in the District of Minnesota, although one of them, Purcell, could have been, and was, served in the Southern District of New York, where he resided, and the action could proceed against him in the transferor district although it could not

9. The chaos or injustice which petitioner foresees as a result of this transfer we believe to be unrealistic. In the most unlikely event that the District Court in Minneapolis would dismiss this action before awaiting the Supreme Court opinion in Brouk, a reversal by the Supreme Court of Brouk would correct that situation promptly. And the converse is true: an affirmance, if petitioner's interpretation of Brouk is correct, will affect this litigation whether it be pending in New York or Minneapolis.

have been brought in the transferee. Indeed, the case would be *a fortiori* to Hoffman v. Blaski since, unlike the moving defendants there, Purcell has not waived objections to jurisdiction or venue in Minnesota by seeking a transfer. Moreover, even as to the defendants who could have been sued in either district, plaintiff ought not be sent to a forum which would dismiss his Investment Company Act claim for lack of jurisdiction over the subject matter. I do not read Clayton v. Warlick, 232 F.2d 699 (4 Cir. 1956), as being to the contrary although I am not certain I agree with all the implications of what was said; the claim there asserted, for patent infringement, was surely one which the transferee court had jurisdiction to entertain.[1]

For these reasons I should think it clear that if the motion to transfer had come before the District Judge for decision just after the Eighth Circuit had decided Brouk v. Managed Funds, Incorporated, in January 1961, dismissing a complaint against directors under the Investment Company Act "for lack of jurisdiction of the subject matter of the claim against them," 286 F.2d at 918, he would have been bound to deny the motion, and we would have been bound to issue the writ if he had not. We would not have thought it proper to make the detailed examination of the claim as to jurisdiction under the Investment Company Act that ultimately led us to a conclusion contrary to the Eighth Circuit's in Brown v. Bullock, 294 F.2d 415 (2 Cir. 1961), over a dissent by one of our brothers, when such a determination could not have had the slightest effect on the District Court for Minnesota; at least for this limited purpose, we should have taken the "law" in the Eighth Circuit to be what the Eighth Circuit said it was.

I cannot see any basis for reaching a different result now. Brown v. Bullock settles the law in the Second Circuit, unless the Supreme Court should later settle it otherwise, and we might be pardoned for having enough confidence in that decision to hope it would be followed in circuits that have not yet encountered the problem. However, it would be quite unrealistic to expect this of the Eighth. Neither, as we have repeatedly been warned, are we to draw from the Supreme Court's grant of certiorari in Brouk any inferences as to the likely result in that Court. Of course, if the Supreme Court should reverse the Brouk decision on a basis that would sustain the Investment Company Act claim asserted in the instant complaint, our action here will have done no harm. But I cannot agree the opposite is true; if the Supreme Court should affirm in Brouk, we will have premitted the transfer of an action based solely on diversity of citizenship to a district, where, as against the individual defendants, it could not have been brought. I would wait and see.

On Petition for Rehearing

PER CURIAM.

The petition for mandamus was denied in the light of all the circumstances of this case, including the grant of certiorari in Brouk v. Managed Funds, Inc., 286 F.2d 901 (8th Cir.), cert. granted, 366 U.S. 958, 81 S.Ct. 1921, 6 L.Ed.2d 1252 (1961). Petitioner now requests rehearing of the matter, on the grounds that the Brouk case has been settled; that the writ of certiorari will be vacated as moot; and that the apparent conflict between Brouk and the decision of this Court in Brown v. Bullock, 294 F.2d 415 (2nd Cir. 1961) will not be soon resolved. Even if we were to assume that there has been a complete settle-

---

1. The Eighth Circuit regarded its dismissal in Brouk as jurisdictional, 286 F. 2d at 918. Hence there is no occasion to consider problems raised by Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939 (1946), cf. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951), or to speculate on whether assertion of the federally based claim in the Minnesota forum would suffice to carry the nonfederal claim under the pendent jurisdiction doctrine.

ment, and that the writ will be dismissed as moot—facts which are not at all certain,[1] we think rehearing of the petition unnecessary and inappropriate.

Enough doubt exists whether Brouk intended to eliminate all possibility of jurisdiction under the Investment Company Act, 15 U.S.C. 80a-1, et seq.,[2] and whether, if so, the Eighth Circuit would adhere to such a ruling in view of the granting of certiorari in that case, the extensive consideration given to the question in Brown v. Bullock, supra, and the trend of scholarly opinion, e. g., 75 Harv.L.Rev. 634 (1962); Eisenberg & Phillips, Mutual Fund Litigation—New Frontiers for the Investment Company Act, 62 Colum.L.Rev. 73, 91–96, 104 (1962), so that the transferee court would be required to assume jurisdiction in the first instance in order to consider the substantial question thus raised. Montana-Dakota Utilities Co. v. Northwest Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Fielding v. Allen, 181 F.2d 163 (2nd Cir.), cert. denied Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950). Since it has been found that "the balance of convenience of parties and witnesses is overwhelmingly in favor of transfer,"[3] we must decline to interfere with this transfer pursuant to 28 U.S.C. § 1404(a) on a petition for mandamus.

Rehearing denied.

FRIENDLY, Circuit Judge (dissenting).

Assuming that the writ of certiorari in Brouk v. Managed Funds, Inc., 286 F.2d 901 (8 Cir.), cert. granted, 366 U.S. 958, 81 S.Ct. 1921, 6 L.Ed.2d 1252 (1961), is dismissed by the Supreme Court as a result of the settlement with the directors who were parties to that appeal (and any uncertainty on that score ought not be of long duration), the petition for rehearing seems to me to demand application of the maxim, *cessante ratione, cessat ipsa lex*. Essential to the original sustaining of transfer was my brothers' recommendation that the District Court for Minnesota withhold action until the Supreme Court had decided the Brouk case. With the decision of the Court of Appeals in that case left standing, the District Court will be obliged forthwith to dismiss so much of the complaint as asserts a claim under the Investment Company Act of 1940, leaving only the claim based on diversity which could not have been brought in that district. Of course, it is possible, as my brothers suggest, that on an appeal from such a decision the Court of Appeals for the Eighth Circuit may be persuaded, in the light of subsequent developments, to alter its unanimous and considered decision in Brouk, which I read as denying any private remedy for violation of the Investment Company Act; but I cannot think that, on a motion for transfer under 28 U.S.C. § 1404(a), it is proper for the transferor court to indulge in speculation of that sort. It is quite true that if a decision in this Circuit turned on the application of a Federal statute to a Minnesota transaction, we would apply our own construction of the statute rather than a contrasting one of the Eighth Circuit; but that is altogether different from applying our own view to determining whether the action "might have been brought" in a district court in that circuit in the face of a decision by the Court of Appeals there that the district court has no jurisdiction.

Beyond all this I cannot understand how it can be thought to be "in the in-

1. The Court has considered three affidavits prepared by counsel for the parties, and an equal number of accompanying legal memoranda. From these papers it appears that only one fact is clear: final steps have not been taken to consummate settlement of the consolidated actions considered in Brouk, and the Supreme Court has not yet vacated its writ of certiorari as being moot.

2. See Ackert v. Bryan, No. 27240, 2nd Cir., January 3, 1962, 299 F.2d 69.

3. Ackert v. Bryan, supra, 299 F.2d 68.

**74**

terest of justice" to remit a plaintiff asserting a claim which we have held to be conferred by a Federal statute, Brown v. Bullock, 294 F.2d 415 (2 Cir. 1961), to a district where, at the very least, he will encounter the maximum difficulty in getting it heard. Although § 1404(a) has properly qualified the plaintiff's position as *dominus litis*, it did not go to the extent of making the defendant the *dominus* and the plaintiff the *servus*, see 1 Moore, Federal Practice (1960), ¶ 0.145 █ and cases cited