## In re INTERNATIONAL MATCH CORPORATION.

District Court, S. D. New York.
Aug. 9, 1932.

See, also (D. C.) 3 F. Supp. 445; (D. C.) 59 F.(2d) 1012.

Rosenberg, Goldmark & Colin, of New York City (James N. Rosenberg, of New York City, of counsel), for trustee.

Cadwalader, Wickersham & Taft, of New York City, for Debenture Holders' Protective Committee.

David L. Podell and Hays, Podell & Shulman, all of New York City, for petitioning creditors.

MACK, Circuit Judge.

This is a petition for review of an order of a referee in bankruptcy refusing further to postpone the election and approving the election, on June 1, 1932, of the Irving Trust Company as trustee in bankruptcy of the International Match Company, adjudicated bankrupt on April 19, 1932.

The principal creditors are the holders of approximately $97,000,000 bearer debentures, widely distributed in 1927 and 1931 by a syndicate of some six hundred banking houses organized by Lee Higginson & Co.

On April 28, 1932, a list of creditors numbering about 11,000 persons and representing about $37,000,000 of the bonds was filed by the bankrupt; the first meeting of creditors called for May 14, 1932, was adjourned to June 1, 1932, at the request of a committee of bondholders hereafter referred to as the Redfield Committee, to enable more complete lists of creditors to be obtained and to give more adequate notice to them. At the May meeting the referee requested attorneys present and officers of the bankrupt corporation to file any names or further lists of creditors which they might have.

At the adjourned meeting on June 1, 1932, the application of the Redfield Committee for another adjournment on the ground that the great majority of the creditors, not having been listed, had had no opportunity to attend, was denied.

Just prior to this meeting, on application of the Redfield Committee, the referee had ordered another committee formerly referred to as the Perkins, but now known as the Traphagen, Committee, to furnish all lists of debenture holders in its possession. Judge Caffey reversed this order on May 27th, holding that whatever the right of the referee might be to direct production of lists under section 39, Bankruptcy Act (11 USCA § 67), there was no such power under section 21a, 11 USCA § 44 (a); further, that as between rival committees aiming to secure deposits from creditors, the court would at least at that time grant no such relief to the one as against the other.

Thereafter, at the June 1st meeting, the Redfield Committee submitted an affidavit that Lee Higginson & Co. from whom, as fiscal agents of the bankrupt, the bankrupt had secured the list of 11,000 creditors, had or could obtain from other members of the syndicate other lists of creditors, and contended that under section 39 of the Bankruptcy Act, it was the referee's duty to compel the production of such lists before the election of a trustee was held. The Redfield Committee, which claims to represent bondholders in the amount of about $2,000,000, refrained from voting; other creditors who voted aggregated about $10,000,000 in claims.

The list of 11,000 bondholders was compiled from records kept by Lee Higginson & Co. as tax withholding agents, in connection with the interest payments for November, 1931, and January, 1932, under the two debenture issues and was the most complete list of bondholders available. From affidavits, dated June 4 and June 7, it appears that the firm had and had given to the Traphagen Committee a list of some 5,700 persons to whom beginning in 1927 they had sold debentures and for whom they had not subsequently resold them. It has not, however, been shown whether or not these 5,700 names were included in whole or in part in the 11,-000 list; in any event, the referee had no knowledge on June 1st of such a list.

The action of the referee in refusing to adjourn the meeting and election was based upon his finding "that all of the circumstances of the case required the immediate election and qualification of the trustee in Bankruptcy with the necessary powers of such and that any further adjournment of the said first adjourned meeting would have been to the detriment of the estate in bankruptcy."

It is unnecessary to detail the facts familiar to the parties. I am clearly of the opinion that the referee, far from abusing the discretion vested in him, was fully justified in reaching these conclusions of fact.

The basis of the present petition is that the alleged failure on the part of the referee to comply with requirements of section 39 of the Bankruptcy Act has enabled a small minority of creditors to elect the trustee.

■■ As attorney in fact and proxy for a creditor, the present petitioner could represent the creditor at meetings and vote her claims.

While an attorney at law as such cannot file a petition to review, an attorney in fact acting for his principal, the creditor, may do so under section 1 (11 USCA § 1) and General Order 27 (11 USCA § 53).

■ And a creditor who voted, or being present refrained from voting, is as an interested party as fully justified in seeking a review as a creditor who for want of actual notice or

knowledge had no opportunity to attend the meeting.

The precise legal claim of the petitioner is that the bankrupt admittedly having failed to file complete lists of creditors, the referee was required by section 39 to augment them. Section 39 so far as material provides: "(a) Referees shall * * * (2) examine all * * * lists of creditors filed by bankrupts and cause such as are incomplete or defective to be amended; * * * (6) prepare and file * * * lists of creditors required to be filed by the bankrupts, or cause the same to be done, when the bankrupts fail, refuse, or neglect to do so." Section 58a (11 USCA § 94 (a) provides that: "Creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt * * * of * * * (3) all meetings of creditors."

That the Bankruptcy Act could not have contemplated that these lists must be complete is, however, amply indicated by other provisions of the act. See sections 7, 17, 55 (11 USCA §§ 25, 35, 91). The impossibility of such a requirement is apparent in the present case involving as it does about $97,-000.000 in bearer bonds. While the referee's duty under section 39 is to take reasonable steps to make the filed list as complete as may be, the law clearly does not contemplate a delay in the election of the trustee until this shall have been accomplished, regardless of time and expense involved therein.

In re Knox, 221 F. 36 (C. C. A. 6th, 1915), although not directly in point, goes even further than is necessary in the present case to sustain the action of the referee. In that case, objection having been made to claims representing a majority of creditors in amount, the referee postponed the election of a trustee. It appeared at the adjourned meeting that the hearings on these claims were delaying the election, to the detriment of the estate. The condition of the estate demanded the immediate election of a trustee. The referee refused to delay longer, and the parties failing to agree upon a trustee, pursuant to sections 2 (17) and 44, 11 USCA §§ 11 (17), 72, the referee made his own selection and appointment. This procedure was held to be within the exercise of a sound discretion.

In my judgment, assuming that lists could eventually have been obtained from the 600 syndicate members of the original purchasers of the debentures, the referee was not bound to delay the election. He was in my judgment justified in believing that the 11,000

listed persons who had deposited the last interest coupons was the best available list, far better, indeed, than the 5,700 list of original purchasers or any similar additional lists would have been. While none of the lists could be deemed other than a list of probable or possible creditors, rather than one of actual creditors, the 11,000 list would seem to fall within the category of probable, while the 5,700 list only of possible, creditors.