**In re Gary William VANCE, d/b/a Big Red Sales, d/b/a Cowboy Petes Pro World, Debtor.**

**Bankruptcy No. 89–04050–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 4, 1990.

Kenneth V. Todd, Tulsa, Okl., for debtor.

Katherine M. Vance, Asst. U.S. Trustee, Tulsa, Okl., John E. Logan, Gen. Counsel, Executive Office for U.S. Trustees Washington, D.C., Martha L. Davis, Atty., Executive Office for U.S. Trustees.

## ORDER

### SUPPLEMENTING "ORDER DIRECTING

### U.S. TRUSTEE TO CONCLUDE 341(a) MEETING"

### FILED JULY 31, 1990

### AND

### DETERMINING INSUFFICIENCY OF "UNITED STATES TRUSTEE'S SHOW CAUSE STATEMENT ..."

### AND

### CONCLUDING § 341(a) MEETING

MICKEY DAN WILSON, Chief Judge.

There comes on for consideration the "United States Trustee's Show Cause Statement Why the § 341(a) Meeting Should Not Be Concluded." The Court takes this opportunity, reserved in its previous "Order Directing U.S. Trustee to Conclude 341(a) Meeting," to review all arguments made by the parties in the course of this dispute and to memorialize and amplify certain findings and conclusions previously announced in open court. Accordingly the Court, upon consideration of the record herein, and pursuant to Bankruptcy Rules 9014 and 7052, finds, concludes, and orders as follows.

### FINDINGS OF FACT

On December 28, 1989, Gary William Vance ("debtor") filed his voluntary petition for reorganization under 11 U.S.C. Chapter 11 in this Court. Debtor's statement of financial affairs and schedules were not filed until January 14, 1990. Pursuant to Bankruptcy Rules 2003(a), X–1006(a), a meeting of creditors was scheduled to be held on January 25, 1990. According to a so-called "Initial Trustee Report" filed January 25, 1990, said meeting was held, but "was adjourned to: unspecified date" for "Reason: to review monthly report due 2/15 and review exemptions." On May 9, 1990, the United States Trustee, Carol Park Wood, by her assistant Katherine M. Vance, ("UST") filed a "... Motion for Conversion or Dismissal ..." of this Chapter 11 case, which was set for hearing on May 22, 1990. A few days before the hearing, on May 18, 1990, debtor filed his "Disclosure Statement" and "Plan of Reorganization." Also on May 18, 1990, debtor filed his "Motion for Order Directing That the 341(a) Meeting in This Case Be Concluded." At hearing on May 22, 1990, the UST's motion to dismiss or convert was determined to be moot; debtor's motion to conclude the meeting of creditors was set for hearing on June 7, 1990 and briefs ordered to be filed on or before June 4, 1990. On June 1, 1990, the UST requested a seven-day continuance of "the case," stating no reason save that "We are preparing a response and memoranda ..." Despite the vagueness of the request and the failure to state any cause, the Court extended the deadline for filing briefs to June 11, 1990, and continued the hearing to June 28, 1990. On June 4, debtor filed his "Memorandum in Support of ..." his motion. On June 11, 1990, the UST filed her "... Response ..." thereto and "Memorandum of Law in Support ..." thereof. After hearing on June 28, 1990, the Court granted debtor's motion on conditions, as follows: the Court directed the UST to conclude the meeting of creditors within 30 days *or* show cause why it should not be concluded. However, a written order memorializing this directive "from the bench" was not filed until July 31, 1990, and was not entered on the docket until August 3, 1990. On July 31, 1990, there was filed an "Order Directing U.S. Trustee to Conclude 341(a) Meeting," whose text referred to "this the 28th day of June, 1990," and provided among other things "that the Assistant United States Trustee ... is hereby ordered to conclude the 341(a) meeting ... within thirty (30) days of today's date or show cause why the same should not be concluded ... that the decision and remarks of the Court in this case are hereby incorporated by reference ... [and] that the Court reserves the right to make additional findings and conclusions should the Court deem the same necessary." On July 30, 1990, thirty-two days after issuance of the Court's directive "from the bench," the UST filed her "... Show Cause Statement

Why the § 341(a) Meeting Should Not be Concluded." A hearing on debtor's disclosure statement was held on August 2, 1990, and continued to August 17, 1990; and continued again to October 4, 1990. On August 13, 1990, the UST filed her "Notice of Re–Setting the Meeting of Creditors," re-scheduling the adjourned meeting for August 24, 1990. According to a so-called "Initial Trustee Report" filed on August 28, 1990, the meeting "was adjourned to: Oct 5, 1990" for "Reason" not specified.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are adopted and incorporated herein by reference.

### CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O), 11 U.S.C. § 341, § 343, § 522(*l*), § 1123, § 1129.

Debtor asks the Court to order the United States Trustee, or her assistant serving in the Northern District of Oklahoma, to conclude the meeting of creditors or "§ 341 meeting" in debtor's Chapter 11 reorganization case. The United States Trustee responds that this Court lacks power to compel the method of exercise of the United States Trustee's duties in administration of bankruptcy cases, or alternatively that in the present instance the United States Trustee has not abused her discretion.

The former Bankruptcy Act provided for a "first" meeting of creditors early in the progress of each bankruptcy case, Act § 55(a), for optional interim meetings thereafter, Act § 55(d), and for a "final" meeting in some cases, Act § 55(e). The present Bankruptcy Code continues to provide for one meeting of creditors "within a reasonable time after" commencement of each case, 11 U.S.C. § 341(a), but lacks any provision for interim or final meetings. The "first" meeting originally provided an occasion for creditors to meet together, establish their claims, and elect a Trustee to administer a debtor's estate in bankruptcy, 3 *Collier on Bankruptcy* (14th ed. 1977) ¶ 55.01. In modern bankruptcy practice, claims are usually made by filing proofs with the Clerk and are determined

by litigation before the Court, 11 U.S.C. §§ 501–502, Bankruptcy Rules 3001–3008; and though Trustees may still be elected, 11 U.S.C. §§ 702–703, Bankruptcy Rules 2003, 2006, they are usually appointed by the Court or, most recently, by the United States Trustee, with the acquiescence of creditors, 11 U.S.C. §§ 701, 702(d), 703(c). Therefore the meeting of creditors has become a less urgent and pivotal event in bankruptcy administration than it once was. But the meeting still provides an opportunity for parties in interest (Trustee, creditors, and any others) to meet with each other and to question the debtor regarding his financial affairs. It is still required by statute that a meeting be held, 11 U.S.C. § 341(a), and that the debtor attend it and "submit to interrogation under oath" thereat, 11 U.S.C. § 343. The meeting was formerly conducted by the Bankruptcy Judge, Act § 55(b), later by the Bankruptcy Clerk, Bankruptcy Rule 2003(b)(1), now by the United States Trustee, 11 U.S.C. § 341(a), Bankruptcy Rule X–1006. Under current law, the Court is positively forbidden to attend the meeting, 11 U.S.C. § 341(c). However, the Court is not and cannot be absolutely excluded from all involvement with the meeting, since the Court must determine any Trustee election in dispute, Bankruptcy Rules 2003(c), X–1006(c), and must determine any disputes over the propriety of questions asked of the debtor, see e.g. *In re Connelly*, 59 B.R. 421 (B.C., N.D.Ill.1986). The meeting must be held within 20–40 days after commencement of the bankruptcy case, Bankruptcy Rules 2003(a), X–1006(a). At the meeting, parties in interest may inquire into "the acts, conduct, or property or . . . the liabilities and financial condition of the debtor, or . . . any matter which may affect the administration of the debtor's estate, or . . . the debtor's right to a discharge," and in cases under 11 U.S.C. Chapters 11 and 13 into "the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formu-

lation of a plan," Bankruptcy Rule 2004(a). No statute speaks to the conclusion, adjournment or continuation of a meeting of creditors; and the only Bankruptcy Rule on that subject merely provides that, *if* a meeting is to be continued and the date and time of continuation is announced before adjournment, no further written notice of the continuation need be given, see Bankruptcy Rule 2003(e).

The United States Trustee and her assistants are officers and employees of the United States Department of Justice. The United States Trustee program was launched on an experimental basis in selected judicial districts in 1978 and expanded nationwide in 1986, for the purpose of improving supervision and policing of, and relieving bankruptcy judges of certain "administrative" duties in, cases under the Bankruptcy Code. There are only 21 United States Trustees, each of them responsible for a considerable "region" encompassing several Federal judicial districts; but from the beginning Congress has expected the United States Trustee program to function in a decentralized manner responsive to conditions within each judicial district where bankruptcy cases may be filed, H.Rep. No. 95–595 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, pp. 101, 438, 132 Cong.Rec. 8998 (1986), and in practice the responsibilities of the office fall on the shoulders of assistant United States Trustees serving in or near the particular judicial districts. Thus, the United States Trustee for this "region" offices in Wichita, Kansas; but an assistant United States Trustee offices in Tulsa, Oklahoma (where this Court sits) and bears the day-to-day responsibilities of administering bankruptcy cases in this the Northern District of Oklahoma and in the neighboring Eastern District of Oklahoma. The regional United States Trustee proper and her local assistant are referred to collectively herein as "the UST," unless a distinction between regional and assistant officers is specifically noted.

The question before the Court is whether or to what extent this Court may and should compel an officer of an Executive Department in the exercise of that officer's duties in the course of administration of a bankruptcy case. For some purposes, the UST is the equivalent of a party in interest, 11 U.S.C. § 307. When the UST makes a motion or objection which comes on for hearing before the Court, the UST is treated as just another party litigant. But when the UST acts as an administrative arm of bankruptcy according to its own statutory powers, e.g. appointing or removing Trustees, committees or committee members, scheduling and conducting meetings of creditors, or requiring reports (or failing or delaying to do such things), some other party in interest may ask the Court to intervene and undo the action (or end the inaction) of the UST. In such situations, the UST is not a mere litigant with a request to be heard, but is an official authority in her own right whose action (or inaction) is to be reviewed by another official authority, the Court. However, the UST is not as independent of the courts as are many other administrative agencies. The UST exists merely to relieve Bankruptcy Courts of tasks which those courts did themselves until recently; there is little specialized expertise the UST has which the Bankruptcy Court does not have also; the UST has literally nothing to work on until a bankruptcy case is filed in a Bankruptcy Court; all UST action is incident to bankruptcy proceedings in Bankruptcy Court. Even when acting as an agency instead of as a litigant, the UST is an auxiliary to the Bankruptcy Court.

In questions involving judicial review of administrative action, the Court turns to the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. ("APA").

The APA consists of a series of overlapping and interlocking statutes, which, when disentangled and rearranged, provide a step-by-step approach to solution of the problem at hand. The many steps may be grouped into three broad stages, as follows: (1) applicability of the APA and opportunity for judicial review; (2) form of proceeding for judicial review; (3) scope and application of judicial review.

The first stage, dealing with applicability of the APA and opportunity for judicial

review, requires the Court to determine whether the UST is an "agency," 5 U.S.C. § 551(1), § 701(b)(1); if it is, whether its conduct in the present matter is "agency action," 5 U.S.C. § 551(13), § 702, § 704; if it is, whether such agency action is ripe for judicial review as provided in 5 U.S.C. § 704; and if it is, whether there is a right of review as to the particular parties before the Court, 5 U.S.C. § 702.

■ The term "agency" is defined in 5 U.S.C. § 551(1), § 701(b)(1), in substantially identical terms, as follows:

"agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; chapter 2 of title 41; or sections 1622, 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix; . . .

The term "authority of the Government of the United States" is itself not defined.

The generality of this definition has required the commentators that have dealt with it to attempt an elaboration along more functional lines than the phrase "each authority" conveys, but recent cases have made it clear that any general definition can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done . . . The unavoidable fact is that each new arrangement must be examined anew and in its own context,

(citations omitted), *Washington Research Project, Inc. v. Dept. of Health, Education and Welfare*, 504 F.2d 238, 245–246 (D.C. App.1974). Along "functional lines," it is held that the test is whether the arm has authority to act with the sanction of government behind it, *Ellsworth Bottling Co. v. U.S.*, 408 F.Supp. 280 (W.D.Okl. 1975), or has any authority in law to make decisions, *Public Citizen Health Research Group v. Dept. of H.E.W.*, 449 F.Supp. 937 (D.C.Col.1978), or has substantial independent authority in the exercise of specific functions, *Conservation Law Foundation v. Harper*, 587 F.Supp. 357 (D.Mass.1984). It is even said that

Where a center of gravity lies, where substantial "powers to act" with respect to individuals are vested, there is an administrative agency for purposes of the APA . . . [However,] a definition stated thus broadly is not self-applying. It is an abstract proposition that does not neatly decide concrete cases,

*Lee Construction Co., Inc. v. Federal Reserve Bank of Richmond*, 558 F.Supp. 165, 173 (D.Md.1982) quoting Freedman, *Administrative Procedure and the Control of Foreign Direct Investment*, 119 U.Pa.L. Rev. 1, 9–10 (1970). The APA is intended to apply to agencies in the executive branch, *Seltzer v. Foley*, 502 F.Supp. 600 (D.C.N.Y.1980); and the term "agency" perhaps includes the President of the United States himself, *Washington Research Project, Inc. v. Dept. of Health, Education and Welfare*, supra, 504 F.2d p. 246, *Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO v. Connally*, 337 F.Supp. 737, 761 (D.C.1971), certainly includes officials who exercise functions vested by Congress in the President and delegated by the President to them *id.*, and has been held to include a wide range of entities operating under the Secretaries or Departments of Agriculture, Interior, Transportation, Defense, Housing and Urban Development, and Justice—see e.g. *Sabin v. Butz*, 515 F.2d 1061 (10th Circ.1975), Agriculture (Forest Service);

*National Forest Preservation Group v. Butz*, 485 F.2d 408 (9th Circ.1973), Agriculture; *Adams v. Witmer*, 271 F.2d 29 (9th Circ.1959), Interior (Bureau of Land Management); *Movement Against Destruction v. Trainor*, 400 F.Supp. 533 (D.Md.1975), Transportation; *Ellsworth Bottling Co. v. U.S.*, 408 F.Supp. 280 (W.D. Okl.1975), Defense (Army and Air Force Exchange Service); *Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C.Circ.1971), Justice (Immigration and Naturalization Service); *Ramer v. Saxbe*, 522 F.2d 695 (D.C.Circ.1975), Justice (Bureau of Prisons); *Pickus v. U.S. Board of Parole*, 507 F.2d 1107 (D.C.Circ.1974), Justice (Board of Parole); *King v. U.S.*, 492 F.2d 1337 (7th Circ.1974), Justice (Board of Parole).

The UST has authority in law to make decisions to conclude or continue meetings of creditors. It is said that 5 U.S.C. § 551(1)(B), which exempts "the courts of the United States" from the APA's definition of "agency," applies to the Probation Service "by its status as an auxiliary of the courts," *Pickus v. United States Board of Parole*, supra, 507 F.2d p. 1112. Probation officers are appointed by the District Court, supervised by the Administrative Office of the U.S. Courts, see e.g. 18 U.S.C. § 3602, § 3603, § 3672, and do not claim sovereign immunity from review of their actions by courts (see below). Thus the Probation Service is an "auxiliary" to the Courts both functionally and organizationally, and may be treated as part of "the courts" themselves for purposes of 5 U.S.C. § 551(1)(B). The UST is an arm of the Department of Justice, an "auxiliary" of the courts in some functional sense but not in any organizational sense; and the UST insists on its independence and even sovereign immunity from this Court. It would be absurd to hold the UST part of "the courts of the United States" under 5 U.S.C. § 551(1)(B) where the result would be to *prevent* any court control over its "auxiliary." As noted above, "each new arrangement must be examined anew and in its own context," *Washington Research Project, Inc. v. Dept. of Health, Education and Welfare*, 504 F.2d p. 246. The UST is not an "auxiliary" of the courts to such degree as would entitle it to be treated as part of "the courts of the United States" themselves for purposes of 5 U.S.C. § 551(1)(B); hence the UST is not exempted from the definition of "agency" in this regard. Nor do any of the other statutory exceptions apply to the UST. No reason appears why the UST should not be considered an "agency" within 5 U.S.C. § 551(1), § 701(b)(1). Accord, *In re Sharon Steel Corp.*, 100 B.R. 767 (B.C., W.D.Pa. 1989), *In re McLean Industries, Inc.*, 70 B.R. 852 (B.C., S.D.N.Y.1987).

The term "agency action" is defined in 5 U.S.C. § 551(13) as follows:

"agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.

The terms "rule," "order," "license," "sanction" and "relief" are in turn defined in 5 U.S.C. § 551(4), (6), (8), (10) and (11), respectively. These definitions, plus § 551(13)'s catchall language "or the equivalent or denial thereof, or failure to act," make it clear that the term "agency action" encompasses practically everything an agency or its officers may do, or not do, in the line of duty.

In the present case, the UST's refusal to conclude the meeting of creditors appears to be a "sanction," or else the denial of "relief," or at the least "failure to act." No reason appears why the UST's refusal to conclude the meeting of creditors herein should not be considered "agency action" within 5 U.S.C. § 551(13), § 701(b)(2).

5 U.S.C. § 704 provides in pertinent part as follows:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review ... Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsidera-

tion, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

The UST's refusal to conclude the meeting of creditors is not expressly "made reviewable by statute," nor is there any statutory requirement for application for reconsideration or administrative appeal. The term "final agency action" is not defined; but § 704's provisions in regard to "finality" seem to codify the judicial doctrine of deference to administrative action where the agency itself may still provide relief so that resort to the Court would be unnecessary. This Court is unaware of any procedure within the UST office for review of the UST's decision not to conclude the meeting of creditors herein. Given the impracticality of administering local affairs case by case from remote UST regional offices, and Congressional intention that the UST system should operate in a decentralized manner, H.Rep. No. 95–595 (1977) pp. 101, 438, 132 Cong.Rec. 8998 (1986), any such procedure would seem improper. Bankruptcy cases in Tulsa will not be well administered if they are to be administered from Washington or from Wichita; if the assistant UST with authority to act in Tulsa exercises that authority (or refuses to exercise it), the appropriate remedy is judicial review by the Bankruptcy Court in Tulsa, not administrative appeal to UST offices in remote places whose officers have duties of a general supervisory support or coordinating nature and who probably lack the time, staff, procedural mechanisms and acquaintance with local case administration to act as an appellate body. No reason appears why the UST's refusal to conclude the meeting of creditors in this case should not be considered "final" and reviewable for purposes of 5 U.S.C. § 704.

In *In re Sharon Steel Corp.*, supra, the Court ruled that "The U.S. Trustee, as a unit of the Justice Department, is an agency within the meaning of the APA," 100 B.R. p. 785, but that the APA did not apply to UST action which was not a formal adjudication on the record and that, since the APA did not apply, the Court would review the UST's action *de novo*. The Court read 5 U.S.C. § 554, which deals only with procedural requirements of such agency action as happens to consist of formal adjudication on the record, as if it were the whole of the APA. In fact, § 554 itself has little to do with judicial review of administrative action, which is dealt with under 5 U.S.C. §§ 701 et seq.; and §§ 701 et seq. apply to all "final agency action" whether or not it involves formal adjudication on the record. The ruling in *Sharon Steel* seems unsupported by some of its own authorities—for example, at 100 B.R. p. 786 the Court cites *Taylor v. District Engineer, U.S. Army Corps of Engineers*, 567 F.2d 1332, 1336 (5th Circ.1978); but in that opinion the Court of Appeals of the Fifth Circuit held that agency action which was not a formal adjudication on the record *was* subject to judicial review under the APA, although the standard of review was the relatively generous one of "abuse of discretion," 567 F.2d pp. 1335–1337. To the extent that *In re Sharon Steel Corp.*, supra, holds the APA inapplicable to any agency action save formal adjudication on the record, that decision appears to be in error and is not followed by this Court.

■ 5 U.S.C. § 702 provides that "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The UST argues that her failure to conclude the meeting of creditors inflicts no injury of any kind on debtor. This proposition is untenable, for reasons more fully discussed below under the subject of abuse of discretion; here it suffices to note that delay in concluding the meeting of creditors leaves the status of debtor's exempt property unsettled, which in turn impedes the presentation and finality of his plan of reorganization, and may also subject him to repeated interrogations without approval of the Court. Delay alone may constitute a "legal wrong" for purposes of § 702, *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. National Mediation Bd.*, 425 F.2d 527 (D.C.App.1970), *Deering Milliken, Inc. v. Johnston*, 295 F.2d 856 (4th Circ.1961).

Whether or to what extent a person is "adversely affected or aggrieved ... within the meaning of a relevant statute" depends on whether agency action affects a "zone of interests" centered on any scheme of statutory rights, *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757. In this case the obstruction of debtor's exemption rights under 11 U.S.C. § 522, interference with plan presentation and confirmation under 11 U.S.C. §§ 1121–1129, and threat of repeated and searching interrogation notwithstanding reasonable limits on disclosure of information, 11 U.S.C. §§ 343, 704(7), suffice to infringe the zone of interests centered on these statutes. No reason appears why debtor should not be considered "a person suffering legal wrong ... or adversely affected or aggrieved by agency action within the meaning of a relevant statute" and hence "entitled to judicial review thereof" pursuant to 5 U.S.C. § 702.

■ The UST argues that, whatever debtor's standing, the UST herself is insulated from judicial review of her actions by the doctrine of sovereign immunity. The doctrine owes its conceptual basis in part to the medieval notion that "the King can do no wrong," 72 AM.JUR.2D (1974) "States" § 99 p. 491, but see *Langford v. U.S.,* 101 U.S. 341, 25 L.Ed. 1011 (1880), in part to the totalitarian speculations of Hobbes, *Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834, 836 (1907); it is incongruous in a modern constitutional republic where the people are sovereign yet all men are supposedly equal before the law. It has obvious uses in guarding against inroads on the public purse, harassment of public officers and obstruction of public policies; but as applied to preclude judicial review of otherwise-unreviewable officers acting in an administrative and not political capacity, it is an imposition on a free people. In the present case, an official of the Department of Justice of the United States of America is accused of misusing her official powers to the unjust injury of a citizen; and replies (in effect) that even if the accusation is true, the victim has no remedy, because the UST in her official capacity is above the

law! The short answer to this is that any defense of sovereign immunity to actions of the present type is waived by 5 U.S.C. § 702. The Court will not dignify the subject with further discussion.

Since it appears that the UST is an "agency," her refusal to conclude the meeting of creditors is "agency action," such agency action is "final ... for which there is no other adequate remedy in a court" and therefore reviewable, debtor is "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" and has standing to seek judicial review of such agency action, and the agency's defense, if any, of sovereign immunity has been waived, the first stage of the inquiry is passed: the APA applies and there exists an opportunity for judicial review of the agency action complained of.

The inquiry proceeds to the second stage, which involves consideration of the form of proceeding for judicial review. 5 U.S.C. § 703 provides in pertinent part that

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence of inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction ... in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil ... proceedings for judicial enforcement.

There is no "special statutory review proceeding" provided by Congress for review of actions by the UST. Hence debtor may and must seek review by "any applicable form of legal action ... in a court of competent jurisdiction ... against the United

States, the agency by its official title, or the appropriate officer."

■ The UST argues that "the debtor's request can only be construed as a mandamus petition brought to compel the [UST] to act ... Pursuant to 28 U.S.C. § 1361, the United States District Court has original jurisdiction over 'any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' Accordingly, this Court is without jurisdiction to award the relief that the debtor seeks," memorandum 6/11/90 pp. 2, 4.

First, assuming that this action is in effect a petition for writ of mandamus, there is no need to resort to a District Judge. Although 28 U.S.C. § 1361 vests original jurisdiction over actions in the nature of mandamus in the District Court, this Court is a part of the District Court, 28 U.S.C. § 151; to the extent that any petition for mandamus arises under title 11 of the Bankruptcy Code or arises in or is related to a bankruptcy case, it is within bankruptcy subject matter jurisdiction, 28 U.S.C. § 1334; to the extent it is within bankruptcy subject matter jurisdiction, it is referred to this Court as delegate and unit of the District Court, 28 U.S.C. § 157(a); if referred to this Court, to the extent it is a core proceeding it may be finally disposed of by this Court, 28 U.S.C. § 157(b), and to the extent it is a non-core proceeding it may, if the parties consent, be disposed of by this Court as if it were a core proceeding, or (absent consent) it may be heard by this Court and made the subject of report and recommendation by this Court which may ripen into a final order, 28 U.S.C. § 157(c). The present action, even if in the nature of mandamus, is certainly within bankruptcy subject matter jurisdiction, has been referred to this Court, and is a core proceeding. This Court may entertain any mandamus petition which is within bankruptcy subject matter jurisdiction as delegate and unit of the District Court; and may finally dispose of any such mandamus petition which is also a core proceeding. Moreover, 11 U.S.C. § 105 expressly grants this Court power to "issue any order, pro-

cess, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105 is a sort of bankruptcy version of the All Writs Statute, 28 U.S.C. § 1651, H.Rep. No. 95–595 pp. 316–317 (1977); yet in a sense it is broader than the latter, for § 105 is not confined to "aid of the court's jurisdiction" but extends to whatever "is necessary or appropriate to carry out the provisions of" the substantive law and procedures in the Bankruptcy Code. The UST's argument in this regard amounts to mere refusal to recognize that this Court is a unit of the District Court charged with the power to do whatever a District Judge could do, within the limits of bankruptcy subject-matter jurisdiction and qualifications of finality of non-core orders. If this is a mandamus action, this Court may entertain and dispose of it.

Mandamus originated as a peremptory order by the King directing one of his subordinate officers to do his duty, 52 AM. JUR.2D (1970) "Mandamus" §§ 2, 4. The peremptory character of the order restricted its use to situations where the subordinate official's duty was clear; hence, the writ lies only where the action to be compelled is ministerial in nature, or where the writ limits itself to commanding that discretion be exercised but does not attempt to guide its exercise in any particular direction, 52 AM.JUR.2D, supra, §§ 9, 10, 64, 72, 73, 76–80, 302, 305, 307–310, 313. For these reasons, traditional mandamus was not permitted to be a substitute for appeal, a means of ruling on the merits of an official's non-ministerial decision, or a remedy for abuse (as opposed to non-use) of discretion, *id.* In recent years, the writ has been expanded by some legislatures desperate to provide a vehicle for judicial review of administrative action, 52 AM. JUR.2D, supra, § 3, and as a device for circumventing statutory restrictions on appeal of interlocutory orders, *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, reh. den. 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957); *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Circ.1977). The Court of Appeals of this Circuit has recently approved the use

of mandamus by appellate courts to remedy interlocutory orders wherein the lower courts have abused their discretion, in this respect standing the traditional doctrine of mandamus on its head, *In re Dalton*, 733 F.2d 710 (10th Circ.1984). Yet the Court of Appeals of this Circuit continues to warn that mandamus is an extraordinary remedy and continues to urge that it be used only as a last resort, in the absence of any other remedy, *In re Kaiser Steel Corporation*, 911 F.2d 380, 387–88 (10th Circ.1990).

■ In the matter now before this Court, the UST insists on the traditional, narrow view of mandamus as applied only to ministerial duties or failure to *exercise* discretion. Here, it is conceded by all that the decision whether or not or just when to conclude a meeting of creditors involves the exercise of discretion by the UST; the UST has in fact exercised her discretion and refused to conclude the meeting at this time; debtor seeks to reverse this exercise of discretion and have the Court substitute its judgment for that of the UST; and under such circumstances a writ of mandamus would not lie. Debtor does not call his request for relief a petition for writ of mandamus, and the relief he asks for is not the sort appropriate to mandamus. His request bears neither formal nor substantive resemblance to an action in mandamus, and there is no reason to treat it as if it were something which it simply is not. The UST would have this Court label all requests for relief against her as "mandamus" whether they fit the narrow conditions appropriate to traditional mandamus or not, and then deny all the ones that did not fit such conditions—no matter how proper such requests might be when measured by standards other than those appropriate to traditional mandamus. This Court will not whipsaw its litigants in such a fashion. If mandamus is limited to ministerial, non-discretionary acts, then this is not a petition in mandamus at all and need not be dismissed for its failure to meet the narrow standards of mandamus; but if mandamus is not limited to ministerial, non-discretionary acts, then there is no need to dismiss debtor's request merely because it

seeks review of an administrative decision involving some discretion.

Finally, there is no need for use of the extraordinary writ in this matter in any event. In the context of judicial review of administrative action, a petition for writ of mandamus is, in effect, an independent lawsuit brought by the aggrieved party against the allegedly inactive official. Federal Courts can only hear "cases" and "controversies," U.S. Const. art. III, § 2; and without some jurisdictional and procedural vehicle such as a petition for writ of mandamus, complaint for injunction, etc., the dispute between private person and government official ordinarily cannot be got before any court. But in the present matter, there is already a case—the Chapter 11 bankruptcy case—pending before this Court; this Court already has jurisdiction of the subject matter and of these parties; the present dispute is merely an incident arising in the course of the case already pending before this Court; and under such circumstances the need to resort to petition for writ of mandamus does not appear. All that is needed is to ask the Court for an order; and that may be done by the normal bankruptcy procedures of application, motion or complaint.

■ The UST argues that "The equitable nature of the remedy sought requires this action to be brought under Part VI of the Bankruptcy Rules. See Bankruptcy Rule 7001(7)," memorandum 6/11/90 p. 9. The referenced rule provides that "An adversary proceeding ... is a proceeding ... (7) to obtain an injunction or other equitable relief." It is not clear how the UST can characterize the same action as being in mandamus and being equitable, for mandamus is a legal writ, *U.S. ex rel. Greathouse v. Dern*, 289 U.S. 352, 53 S.Ct. 614, 77 L.Ed. 1250 (1933), even though it is granted for reasons analogous to equitable principles, *id.* Although alternative argument is permissible, it should be designated as such to distinguish it from inconsistent argument. This action is not in mandamus; but that does not make it equitable. Debtor asks for an order; but every order is not an injunction. The distinction between the

two is not perfectly clear, and it appears that debtor's request for an order directing and compelling the UST to do a certain thing a certain way lest debtor suffer otherwise-irremediable harm has some of the quality of injunction about it. The UST insists that "if the debtor wishes to proceed, he should do so only by filing a complaint and obtaining proper service upon the [UST]," memorandum 6/11/90 p. 9. But the choice of motion practice or adversary proceeding in bankruptcy is merely a matter of degree—of "what process is due" in a given cause. The difference between the two methods of proceeding is not great, since Bankruptcy Rule 9014 governing contested motions adopts many of the adversary-proceeding rules of Part VII of the Bankruptcy Rules and allows for the specific designation or adoption of yet more on order of the Court. Forcing debtor to dismiss the present matter, file a complaint and obtain new service would make no practical difference in the way this matter is conducted, except perhaps to heap further burdens and delays on debtor. Under these circumstances, even if the Court were convinced that the matter should be an adversary proceeding for injunctive relief under Bankruptcy Rule 7001(7), the Court would merely convert the present contested matter to an adversary proceeding without dismissing it. But in administrative-review matters such as the present one, especially where the agency to be reviewed is already before the Court, the relatively slow and expensive adversary-proceeding method seems unnecessary and undesirable. If this matter were clearly a request for injunction, Bankruptcy Rule 7001(7) would require conversion of the matter to an adversary proceeding whether or not "necessary and desirable;" but this matter appears indefinite enough to allow some choice, and this Court opts for the quicker and less cumbersome method of motion practice under Rules 9013, 9014. Hence, filing a complaint and obtaining new service in this matter is not necessary. The Court notes that a proposed new Bankruptcy Rule 2020 would expressly allow relief against the UST to be sought by motion, see Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Preliminary Draft of Proposed Amendments to the Bankruptcy Rules* (August 1989).

Since the present form of proceeding is adequate, the inquiry proceeds to the third stage, which involves the scope and application of judicial review.

Two separate provisions of the APA, 5 U.S.C. § 701(a) and § 706, address the scope and application of judicial review. Section 701(a) provides that

This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

Section 706 provides that

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

As parts of the same Act, these statutes must be read together; and the limitation of judicial scrutiny provided by § 701 must be reconciled with the provision for judicial scrutiny provided by § 706. The apparent conflict between these statutes is especially acute with regard to § 701(a)(2) and § 706(2)(A). "How to reconcile the withdrawal from judicial scrutiny of discretionary agency action in [§ 701(a)(2) ] with the mandatory judicial review for abuse of discretion in [§ 706(2)(A) ] has been the subject of sharp dispute," *Littell v. Morton,* 445 F.2d 1207, 1210 (4th Circ.1971).

▇▇▇ Section 701(a) has been narrowly construed. There is a "basic presumption of review," to be rebutted "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent," *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–141, 87 S.Ct. 1507, 1510–1511, 18 L.Ed.2d 681, 686–687 (1967). Under § 701(a)(1), statutes may preclude judicial review, expressly or by implication; but the expression must be clear, *Shaughnessy v. Pedreiro,* 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955), or the implication strong and convincing, *Abbott Laboratories v. Gardner,* supra; *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Under § 701(a)(2), agency action is committed to agency discretion by law to such extent as would prevent judicial review only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply,' " *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136, 150 (1971), which in turn means that "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714, 723 (1985).

▇▇ With these strictures in mind, the Court inquires, pursuant to § 701(a), whether there are any statutes which preclude judicial review of, or commit to the UST's discretion subject to no meaningful standard of review, situations such as that now before the Court.

The UST points out that 11 U.S.C. § 341 provides that "the United States trustee shall convene and preside at a meeting of creditors" and that "The court may not preside at, and may not attend, any meeting under this section ..." The UST argues that these provisions give all functions related to "convening" and "presiding at" meetings of creditors into her hands, absolutely free of judicial intervention. The statute makes it quite clear that the UST shall "preside" at the meeting and that the Court shall neither "preside" nor "attend." The statute does not specifically say that the Court cannot "convene," nor does the statute say or imply that the UST may do whatever she pleases in the course of "convening" or "presiding." The statute is silent with regard to "concluding" meetings of creditors. Moreover, against § 341 must be set § 105, which would seem to imply that the Court may override any discretion vested in the UST with regard to meetings of creditors insofar as "necessary or appropriate to carry out" any provisions of the Bankruptcy Code. If, for example, the UST refused to *convene* a meeting of creditors, this Court would surely have power to inquire into the matter and to issue orders correcting the situation; no less can be expected with regard to *conclusion* of a meeting. Moreover, the Court should have power to see to the determination of exemptions and the timely processing and confirmation of plans under §§ 1121–1129. The UST also points to 28 U.S.C. § 586, which provides in pertinent part that

(a) Each United States trustee ... shall—

. . . . .

(3) supervise the administration of cases and trustees in cases ... by,

whenever the United States trustee considers it to be appropriate—

. . . . .

(B) monitoring plans and disclosure statements filed in cases under chapter 11 . . .;

. . . . .

(D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;

(E) monitoring creditors' committees appointed under title 11;

. . . . .

(G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress;

. . . . .

(5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe;

. . . . .

It is obvious that portions of this statute authorize and direct the UST to choose "such action as [she] deems to be appropriate" in accomplishing her lawful commission to assist bankruptcy administration. It is equally obvious that this commission to act does not enlarge her substantive powers beyond those otherwise available by law. 28 U.S.C. § 586 may commit to UST discretion the choice among otherwise available means; but it does not give the UST "discretion" to use any means she fancies in any way she pleases. No part of 28 U.S.C. § 586 authorizes the UST to act in an otherwise unlawful or abusive manner and excuse herself by pleading "discretion." If the UST refused to *convene* a meeting of creditors which ought to be held, 28 U.S.C. § 586 would not excuse the dereliction; the same should be true if the UST refuses to *conclude* a meeting which ought to be concluded. There is a statute

commanding that meetings be *convened,* 28 U.S.C. § 586, and none commanding that they be *concluded;* moreover, whether a meeting should be *concluded* may well involve some discretion on the part of the presiding officer. But this involves the substantive limits of the available means, i.e. the law of meetings of creditors. There is such a "law to apply" in this regard. The decision whether to conclude meetings of creditors was made by the Court itself before 1979, by the Clerk of the Court (subject, no doubt, to the Court's review and correction) from 1979 to commencement of the UST program in this District in 1987; such decision involves an estimate of the purpose and function of the meeting of creditors in bankruptcy law and procedure as applied to facts at hand (discussed in more detail below); prior authority entrusted such decision to the *sound* discretion of the presiding officer, 3 *Collier on Bankruptcy* (14th ed. 1978) ¶ 55.02 pp. 13–14 citing *In re Knox,* 221 F. 36 (6th Circ.1915), *In re Rosenfeld–Goldman Co.,* 228 F. 921 (D.C.Mass.1915), *In re Nice and Schreiber,* 123 F. 987 (D.C.Pa.1903) and see *In re McGill,* 106 F. 57 (6th Circ.1901), *In re Bryant,* 188 F. 530 (D.Pa.1911), *In re International Match Corp.,* 3 F.Supp. 443 (D.N.Y., 1932), *In the Matter of Lukehard,* 14 Am.B.R.(N.S.) 50 (D.Pa.1929). Thus there is a "meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney,* supra. 28 U.S.C. § 586 takes none of this away; it does not even mention meetings of creditors, and does not address or affect either convening or concluding of such meetings. The Court concludes that nothing in Title 11 or Title 28 either precludes judicial review or commits the matter at hand to agency discretion subject to no meaningful standard of judicial review. Therefore, 5 U.S.C. § 701(a) does not control; and the inquiry proceeds to 5 U.S.C. § 706.

Section 706(1) applies to agency *inaction,* and provides that "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." This begs the question, what is "unlawful" or "unreasonable," and to what extent should the Court substitute its judg-

ment on these matters for that of the agency?

 Section 706(2) applies to agency *action*, presumably including agency decision not to do something—as opposed to agency failure to decide whether or not to do something, which would be reviewable under § 706(1)—and lists six different things that "the reviewing court shall" do. Three of these, § 706(2)(B), (C) and (D), deal with agency decisions that suffer from want of power or procedural defect. The other three, § 706(2)(A), (E) and (F), deal with agency decisions that are erroneous "on the merits," i.e., are within the agency's power to make and are procedurally proper and adequate but are just plain wrong. The matter now before the Court does not involve formal agency adjudication on the record, in which the agency has acted in a manner analogous to a trial court rendering a final opinion; rather, this matter involves "low-visibility discretionary decision-making without a formal 'proceeding' [by the agency]," H. Leventhal, "Nature and Scope of Judicial Review," in Christensen and Middlekauf, *Federal Administrative Law: Practice and Procedure*, 293, 298 (1977), in a function which in bankruptcy terms would be classed as "administrative." Of § 706(2)'s six elements, the one that seems best applicable to the present matter is § 706(2)(A)—"The reviewing court shall ... hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Exactly what standard of review should be applied under § 706(2)(A) is not clear. Thus, "arbitrary or capricious" is not necessarily the same as "abuse of discretion" which is not necessarily the same as "otherwise not in accordance with law." The subsection seems to mean that the reviewing court should set aside agency action whenever such action is "not in accordance with law;" that agency action is "not in accordance with law" when it is "arbitrary" or "capricious" or "an abuse of discretion;" and that agency action might be not arbitrary, not capricious, not an abuse of discretion, yet still be "otherwise not in accordance with law" and subject to judi-

cial reversal. A court attempting to review agency action under § 706(2)(A) must therefore determine without further guidance from the APA what agency action, or what degree of exercise of agency discretion, is "in accordance with law," and whether the agency action in question has exceeded the limit. This too should turn on Congressional intent; but such intent may be less clearly evident than is required under § 701(a) and more difficult for courts to determine and apply. Thus the question of judicial review of agency discretion becomes essentially a matter of judicial discretion.

As noted above, the UST serves as an auxiliary to the Bankruptcy Court. It is therefore entirely natural and proper that its actions should be subject to review in some degree by the Bankruptcy Court. Since the Bankruptcy Court is itself a specialized tribunal with expertise little if any inferior to that of the UST, an important reason for court deference to agency action does not obtain here. 11 U.S.C. § 105 can be read to authorize this Court to do whatever in the Court's own judgment is "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. These factors suggest that the Bankruptcy Court may review UST actions *de novo*, in effect substituting its own judgment for that of the UST whenever asked to do so. Other bankruptcy courts have seemed positively eager to fasten *de novo* review on actions by the UST, effectively denying the UST any discretion, *In re Sharon Steel Corp.*, supra; *In re Texaco*, 79 B.R. 560 (B.C., S.D.N.Y.1987). But it appears to this Court that this would encourage parties to move for the Court's intervention whenever any action by the UST was less than perfectly satisfactory to them; would render the UST largely superflous; and would frustrate Congressional intention to relieve the Courts themselves of administrative duties. Great things are expected of the UST; but the program will never get off the ground if its officers are not allowed to stand on their own legs. It appears to this Court that it should adopt a standard of review more deferential than *de novo* re-

view, at least absent compelling circumstances to the contrary. Herein, in an area which is one of the UST's primary "administrative" responsibilities to the near-complete exclusion of involvement by the Court, a deferential standard of review is appropriate. This Court concludes that the standard of review expressly prescribed by § 706(2)(A), namely "arbitrary, capricious, or an abuse of discretion," should be adopted; but the Court will inquire no further. In short, what is "in accordance with law" for present purposes is whatever is within the UST's *sound* discretion. The Court will act to correct an abuse of discretion, but otherwise the UST's decision will stand.

■■■ The present matter might equally well be classified as agency inaction under § 706(1) or agency action, in the sense of decision not to do something, under § 706(2). In the former case, the Court would order the meeting of creditors to be concluded if it found that conclusion had been "unreasonably delayed;" in the latter case, the Court would order the meeting of creditors to be concluded if it found that the decision not to conclude it was "arbitrary, capricious, [or] an abuse of discretion." There seems to be no great difference between what is "unreasonable" and what is "an abuse of discretion;" the Court will not attempt to split this hair unless it becomes necessary to do so.

There are two main reasons why the meeting of creditors should be concluded. First, the deadline for objecting to debtor's exemptions does not begin to run until the date the meeting is *concluded*, per Bankruptcy Rule 4003(b). If the meeting is not concluded, the debtor's exemptions remain unsettled. In the present case, debtor's plan and disclosure statement have already been filed and scheduled for hearing; it could easily occur that the debtor's exemptions remain unsettled even after the date his plan should have been confirmed. If debtor's exemptions are undetermined, the property which debtor must devote to the plan is undetermined; the status of some claims as estate property and their allowance and treatment under 11 U.S.C.

§ 506(a) may be uncertain, see *In re Dewsnup,* 908 F.2d 588 (10th Circ.1990) citing *In re Shrum,* 98 B.R. 995 (B.C., W.D.Okla.1989); and neither debtor nor creditors can know precisely what they are doing in proposing or voting on a plan. Second, a meeting of creditors is a sort of deposition which debtor is statutorily commanded to attend, 11 U.S.C. § 343, and whose scope can be very broad and intrusive, Bankruptcy Rule 2004(b). Normally, examinations of debtor or any other party under Rule 2004 are allowed only with permission of the Court, Rule 2004(a). The sole exception is the statutorily-commanded meeting of creditors. If such meeting is continued and rescheduled and continued again without conclusion, debtor is in effect made subject to an indefinite series of interrogations under oath at the whim of the UST, without any protection from the Court.

Debtor's statements and schedules providing information on the recent history and current status of his financial affairs were filed less than two weeks before the meeting of creditors. Where such information was not available until very shortly before the meeting, there might well be reason to continue the meeting to give parties in interest a reasonable time to formulate questions to ask at the meeting. In the present case, the UST does not say that more time to review debtor's schedules was reasonably necessary; and in any event, such a reason would not justify continuing the meeting to an indefinite date and failing to reschedule the meeting for the next seven months.

The UST says the meeting should be continued because the UST "has several concerns with the disclosure statement," the "Schedule B–4 reflects several questionable claimed exemptions ... which the [UST] will be exploring at the continued § 341(a) meeting," and the UST intends "to question the debtor under oath regarding the information contained in the disclosure statement and the debtor's claimed exemptions," show cause statement unnumbered pp. 1–2. Moreover,

At the continued § 341 meeting ... the [UST] will also attempt pursuant to 11 U.S.C. § 1102(a)(1) to solicit additional creditor interest in participating on the unsecured creditors committee. The current committee consists of five (5) trade creditors who have not hired counsel and who have not taken an active role in questioning the debtor's claimed exemptions, the adequacy of the disclosure statement, or in any stage of this proceeding. Rather than the [UST] directly pursuing her concerns in these substantive areas through litigation with the debtor, she prefers, in her administrative discretion, to attempt to form a more representative creditors committee that can pursue, if they deem it appropriate, the substantive concerns of creditors of this estate before the Court. 28 U.S.C. § 586(a)(3)(E) specifically provides that the [UST] shall monitor creditor committees ...,

*id.* In general, the UST asserts, "The meeting should not be concluded until these issues have been resolved. Section 341(a)(1) provides the [UST] a forum to monitor the debtor's activities," *id.*

The UST is entitled to ask for and receive periodic reports and other information on operation of debtor's business, 11 U.S.C. § 704(8), § 1106(a)(1), § 1107(a). If any more information bearing on debtor's plan and disclosure statement is needed, it can be got by asking the Court for an examination of debtor under Rule 2004. So long as the ability to object to claims of exemption remains open, information bearing on claims of exemption can likewise be obtained by requesting a 2004 exam; and the initial deadline for objecting to claims of exemption can be extended by order of the Court, Rule 4003(b); but see *In re Brayshaw*, 912 F.2d 1255, 1256–57 (10th Circ.1990). An examination under Rule 2004 may be requested by "any party in interest;" the phrase "party in interest" is undefined by Code or Rules and surely may mean different things for different purposes; the UST is specifically empowered to act as a litigant, 11 U.S.C. § 307, and surely was never intended to have *less* access to information than others partici-

pating in bankruptcy administration. There is no need to hold the meeting of creditors open where the Court will grant examinations under Rule 2004 and extensions of time under Rule 4003(b); and where the Court should not grant these things, a maneuver to gain them in spite of the Court by continuing the meeting of creditors would be unjustified and abusive. As for the creditors' committee, there is no reason to suppose that the present committee is "unrepresentative;" the real problem seems to be that it is *inactive*, and for this reason the UST says she wants to reconstitute it. The UST can solicit membership on the committee by means other than reconvening the § 341 meeting. Even if reconvening the meeting were the preferred means, no reason appears why the UST should have waited seven months without actually rescheduling the meeting and reconstituting the committee. Although the meeting has been reconvened once and continued yet again, it does not appear that any new committee has yet been constituted. A seasonably reconstituted committee can itself ask to examine debtor under Rule 2004 if need be; there is no need to hold the meeting of creditors open indefinitely on the chance that some new committee member might want to ask debtor a question.

It is possible that this meeting would not have been rescheduled yet, but for debtor's efforts to compel it and this Court's order of June 28, 1990. Indeed, if the UST's arguments are accepted, it would seem that meetings of creditors should routinely be left unconcluded in many or most Chapter 11 cases at least until confirmation of the plan. The meeting of creditors is not a reasonable means of "monitoring" plans, disclosure statements, creditors' committees, or anything else. It is not a general discovery tool to be kept around for any handy occasion. Congress insisted on *one* general examination of debtor, which is scheduled as early as practicable in the case for the purpose of *launching* the administration of the case. Congress did not authorize an indefinite series of general examinations of debtors for the purpose of

*maintaining* the administration of the case. When the meeting of creditors has served its purpose, it is to be folded up and put away; for other purposes, other tools are available and proper. To use the meeting of creditors as "a forum to monitor the debtor's activities" is to abuse it.

According to one prominent authority, "The practice of keeping meetings alive by successive continuances has been common and has much to commend it; it saves delay and expense in calling creditors together to consider special matters and often makes prompt action possible," 2 *Collier on Bankruptcy* (15th ed. 1990) ¶ 341.02 p. 341–7. The remark is merely paraphrased from a previous edition, 3 *Collier on Bankruptcy* (14th ed. 1978) ¶ 55.02 pp. 13–14. This earlier authority opined that the practice of continuing meetings was "to be recommended, *if not abused,*" *id.* (emphasis added), and cited cases to the effect that meetings might be continued for "a few hours," *In re Rosenfeld–Goldman Co.,* supra, or "for twenty-four hours," *In re Nice and Schreiber,* supra, or "from time to time" as necessary to hear objections to claims, *In re Knox,* supra, and for the urgent purpose of allowing creditors to elect a Trustee, *id.* Here is no support for the notion that meetings may be continued indefinitely for the greater part of a year as "a forum to monitor the debtor's activities."

The Court concludes that the delay in concluding the meeting of creditors in this case is unreasonable; that the UST has abused her discretion; that an order to conclude the meeting of creditors is necessary and appropriate to carry out the provisions of the Bankruptcy Code and Rules regarding reasonable limitations on discovery and expeditious determination of exemptions and confirmation of debtor's plan; and that the UST's "... Show Cause Statement ..." shows no cause why the Court should not order that the meeting of creditors in this case be concluded forthwith. Since the facts are not in dispute, and the UST has had ample opportunity to present her view of issues of law, there is no need for further hearing on the matter.

The meeting of creditors under 11 U.S.C. §§ 341–343 in this case is hereby concluded. The Clerk of this Court shall enter the conclusion of said meeting on the case docket and shall notify all parties in interest that said meeting has been concluded.

AND IT IS SO ORDERED.